UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

IRMA MARTINEZ,

        Plaintiff,

v.                                       Case No. 2:08-CV-00810

JEFFERSON N. CALIMLIM, et al.,

        Defendants.

## BRIEF IN SUPPORT OF JEFFERSON N. CALIMLIM'S AND ELNORA M. CALIMLIM'S MOTION TO DISMISS COUNTS I-IV AND TO STAY COUNTS V-VI OF THE PLAINTIFF'S COMPLAINT

Defendants Jefferson N. Calimlim and Elnora M. Calimlim (the "Calimlims"), by their undersigned counsel, respectfully submit this brief in support of their Motion to Dismiss Counts I through IV of the plaintiff's Complaint pursuant Fed. R. Civ. P. 12(b)(6), and to stay Counts V and VI pursuant to 18 U.S.C. § 1595(b)(1).

## INTRODUCTION

The Calimlims employed the plaintiff, Irma Martinez, in their home illegally for more than 19 years, and paid an enormous price for doing so. The Calimlims are each presently incarcerated in federal prison, awaiting resentencing in *United States v. Calimlim, et al.,* Eastern District of Wisconsin Case No. 04-CV-248. The matter is on remand before Chief Judge Randa, who previously entered a $916,635.16 restitution order in favor of Ms. Martinez.

The Complaint in this action alleges that Ms. Martinez was illegally trafficked to the United States in 1985 when she was 19 years old, and that she was then "enslaved" in the

Calimlims' home until being "rescued" by federal authorities in September 2004. The Calimlims dispute many of the Complaint's factual allegations, and dispute entirely the Complaint's inflammatory and rhetorical characterizations. For the limited purpose of this motion, however, the Calimlims urge the Court to accept as true all of the plaintiff's well-pled factual allegations, because even if it does so, the Court must dismiss four of the plaintiff's six causes of action pursuant to Fed. R. Civ. P. 12(b)(6).

Counts I and III of the Complaint assert claims under the federal RICO statute and its Wisconsin state law counterpart. The claims fail because Ms. Martinez fails to allege a cognizable RICO enterprise or a pattern of racketeering activity. This case does not involve a criminal organization with a structure and hierarchy operating over the course of time in pursuit of a common purpose. It is about a couple who employed an illegal alien as their live-in housekeeper. The fact that the couple had three kids when the so-called enterprise came into being does not convert this into a RICO case. Nor does the Complaint allege a "pattern of racketeering activity," as a civil RICO claim requires. The Complaint alleges a single alleged scheme, with a single victim, suffering distinct claimed injuries. For each of these reasons, Counts I and III of the Complaint should be dismissed.

Count II of the Complaint must be dismissed for at least two reasons. First, the plaintiff's failure to plead a cognizable RICO claim dooms the conspiracy claim. Second, the Complaint fails to allege a cognizable conspiracy to violate the RICO statute. A conspiracy requires active, informed, and voluntary agreement by the conspirators, and that simply was never the case here. The Complaint never explains how or in what manner three children, beginning at ages 5, 8 and 11, agreed with their parents to violate the RICO statute. The plaintiff's conspiracy claim fails, because it is the proverbial square peg. This is not, nor has it ever been, a RICO case.

The plaintiff's fourth claim purports to assert a civil cause of action for involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution and 18 U.S.C. § 1584. Federal courts around the country have expressly considered – and flatly rejected – such claims as a matter of law, and this Court should do the same. Where Congress has intended to create a private cause of action for Thirteenth Amendment violations, it has done so expressly.

Finally, the Court should stay Counts V and VI of the Complaint pursuant to the statute giving rise to those claims, 18 U.S.C. § 1595. Section 1595(b)(1) requires that this action be stayed until the Calimlims' criminal matter is finally adjudicated before Judge Randa. Final adjudication requires, at a minimum, resentencing.

## THE COMPLAINT

Ms. Martinez seeks $5.4 million in damages as the result of RICO conspiracy that allegedly began when she was trafficked into the United States in 1985, and continued with her alleged "enslavement" at the home of Dr. Jefferson N. Calimlim and his wife, Elnora Calimlim, MD until September 2004. (Complaint, ¶ 1, 7, & 10) Ms. Martinez came to the United States in 1985 at the age of 19. She worked as a live-in housekeeper and childcare provider in the Calimlims' home until September 29, 2004. (Complaint, ¶¶ 32 & 69)[1] Ms. Martinez alleges that the Calimlims and their children (also defendants herein) forced her to work long hours for inadequate pay – and against Martinez's will during certain periods – and that they concealed her presence during that period. (*See id.,* at ¶¶ 1, 21, 35-36, 38-56; 60-68; & 70-81) Ms. Martinez also claims she suffered various forms of abuse, and that the Calimlims misled her about her

---

[1] At age 16, while still residing in the Philippines, Ms. Martinez began working for defendant Elnora Calimlim's father, Dr. Jovito Mendoza (deceased). (*Id.,* ¶ 25) Martinez alleges that Dr. Mendoza "recruited" her to come to the United States to work for the Calimlims, and then made the arrangements for her to travel here. (*Id.,* ¶ 28-31)

immigration status and the consequences that she would suffer if discovered living in the United States as an illegal alien. (*Id.*, ¶¶ 82-89 & 90-92).

The Complaint asserts six causes of action: Count I of the Complaint asserts a civil RICO claim arising under 18 U.S.C. § 1964(c) against the so-called "Parent Defendants," Dr. Jefferson and Dr. Elnora Calimlim. (*Id.*, ¶¶ 107-15) Count II alleges a federal RICO conspiracy against all defendants. (*Id.*, ¶¶ 116-122) Count III asserts a claim for relief against all defendants under Wis. Stat. § 946.87, part of the Wisconsin Organized Crime Control Act ("WOCCA") (the federal RICO statute's state law counterpart). (*Id.*, ¶¶ 123-129) Count IV asserts a claim which, according to the plaintiff, arises under the Thirteenth Amendment to the United States and 18 U.S.C. § 1584 (*Id.*, ¶¶ 130-135). Finally, Counts V and VI assert claims for monetary relief and attorneys' fees under 18 U.S.C. § 1595. (*Id.*, ¶¶ 136-153)

## ARGUMENT

The Court should dismiss Counts I through IV pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief may be granted. The Court should stay the plaintiff's remaining claims for relief until final adjudication in the trial court on the Jefferson N. Calimlim's and Elnora M. Calimlim's criminal proceedings.[2]

I.   APPLICABLE LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Dismissal of a claim under Rule 12(b)(6) is warranted if the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999); *see Conley v.*

---

[2] Dr. Jefferson Calimlim and Elnora Calimlim were indicted, and in May 2006 convicted, on charges of obtaining and conspiring to obtain forced labor in violation of 18 U.S.C. §§ 31, 1589 and 1594, and harboring and conspiring to harbor an alien for private financial gain in violation of 18 U.S.C. § 1324(1). The Seventh Circuit Court of Appeals affirmed the Calimlims' convictions in a decision issued August 15, 2008, but reversed their sentences and remanded the case for resentencing. *United States v. Calimlim*, 538 F.3d 706, 718 (7th Cir. 2008)

*Gibson,* 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of the plaintiff's allegations are accurate, he or she has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir. 1999).

A RICO claimant's obligation to state the grounds of her entitlement to relief requires more than labels and conclusions. A formulaic recitation of the elements of a cause of action will not do. The claimant's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that the allegations are true. *Jennings v. Auto Meter Products, Inc.,* 495 F.3d 466, 472 (7th Cir. 2007), *quoting Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). Moreover, a RICO claim must have some degree of plausibility to survive dismissal. A "defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim." *Limestone Development Corp. v. Village of Lemont, Ill.* 520 F.3d 797, 803 (7th Cir. 2008), *discussing Twombly.*

II.  COUNTS I AND III OF THE COMPLAINT FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED.

As noted above, Counts I and III of the Complaint assert civil claims alleging racketeering activity in violation of 18 U.S.C. § 1962(c) and its Wisconsin counterpart, Wis. Stat. § 946.83(3). The Court should dismiss these claims under Fed. R. Civ. P. 12(b)(6), because the plaintiff has failed to allege facts which, if proven, would establish the necessary elements of an enterprise, and a pattern of racketeering activity. The Complaint alleges facts describing family household activity and then adorns them with conclusory RICO labels and buzzwords. Under *Twombly*, whose reasoning and requirements apply with full force to civil RICO claims brought in this circuit, such allegations are insufficient to state viable claims for relief. *Limestone*

*Development Corp.*, 520 F.3d at 803-04; *and Jennings v. Auto Meter Prod., Inc.*, 495 F.3d at 473.

### A. RICO – An Overview

Congress passed RICO in an effort to combat organized, long-term criminal activity. *Id.,* at 472. To that end, the RICO statute provides, in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).[3]

Although RICO is a criminal statute, it provides a private right of action to "[a]ny person injured in his business or property by reason of a violation." 18 U.S.C. § 1964(c); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006). In order to state a civil claim stemming from a violation of § 1962(c) or Wis. Stat. § 946.83(3), a plaintiff must adequately allege each of the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Jennings*, 495 F.3d at 472; *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). A RICO plaintiff must allege facts sufficient to support each element, and cannot simply allege these elements using boilerplate language. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *Goren*, 156 F.3d at 727.

---

[3] Wis. Stat. § 946.83(3) provides, "No person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity." § 946.83(3) must be interpreted as is its federal equivalent, 18 U.S.C. § 1962(c). *State v. Judd*, 147 Wis. 2d 398, 401-02, 433 N.W.2d 260 (Ct. App. 1988).

## B. The Plaintiff's Complaint Fails to Adequately Plead Facts Establishing the Existence of a RICO "Enterprise."

The Complaint fails to identify a cognizable RICO enterprise, which is an indispensible element of a viable RICO claim. *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). ("A RICO complaint must identify the enterprise.") The plaintiff alleges that the Calimlim parents "established their family as an association in fact enterprise" beginning in 1985. (Complaint, ¶ 109)[4] At that time, the Calimlims' three children – all defendants herein – were ages 11, 8 and 5. The remaining members of the so-called "Human Trafficking and Alien Harboring Enterprise" – the Mendozas[5] – resided in the Philippines.

"While a RICO enterprise can be formal or informal, some type of organizational structure is required." *Stachon v. United Consumers Club*, Inc., 229 F.3d 673, 675 (7th Cir. 2000). The "hallmark of an enterprise is 'structure.'" *United States v. Korando*, 29 F.3d 1114, 1117 (7th Cir. 1994) (citation omitted). An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Such an enterprise must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) (citations omitted). The organization must have "goals separate from the predicate acts themselves." *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991).

No case in the United States has recognized a nuclear family, including minor children, as an association-in-fact enterprise. An association-in-fact requires continuity and the

---

[4] A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

[5] The Mendozas are Elnora Calimlim's parents. (Complaint, ¶¶ 19, 21)

differentiation of roles, as well as a common purpose of engaging in a course of conduct. *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) (common purpose is an "essential ingredient" of any association-in-fact enterprise). These essential characteristics stem from conscious, voluntary, and affirmative action taken by alleged association members, because "to associate" requires one to *choose*: to join, link or connect with others for a common purpose.[6] *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 966 (7th Cir. 2000) ("Agreement to participate somehow in an enterprise is active; it is personal."). Mere family membership is not "association" in any relevant sense, because it lacks the fundamental element of choice. Parents do not "associate with" their children by bearing and rearing them. The parent/child relationship is a biologic phenomenon, giving rise to blood kinship and an array of legal duties, responsibilities and protections.

Moreover, absent some unusual circumstance not alleged by the plaintiff, nuclear families lack the structure, common purpose and course of conduct required for an "association-in-fact" RICO enterprise. Parents and their minor children do not decide upon their respective roles within the household. Parents raise children; children live and grow within the household environment, for better or worse. Parents make rules; children are expected to follow them.[7] The relationship is not association for the joint pursuit of some common purpose. It's the natural order of things and bears no resemblance to the voluntary, organized, structural hierarchy

---

[6] Associate –" 1. To join (with another or others) as a companion, partner, friend, etc. 2. To unite as friends, partners, etc.; join for a common purpose; keep company." *Webster's New Twentieth Century Dictionary*. 2nd Ed. (1975).

[7] Merely complying with household rules cannot reasonably subject a child to RICO liability. Acting on behalf or in furtherance of an alleged RICO enterprise, even with knowledge of its illicit purpose, without more is inadequate to make someone liable for a RICO violation. *Slaney*, 244 F.3d at 598, *citing Goren*, 156 F.3d at 726; *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (requiring that RICO defendant participate in operation or management of enterprise's affairs).

required for a RICO enterprise.[8] The Court should dismiss the plaintiff's RICO claims, because as a matter of law and of basic common sense, this case "lacks any of the hallmarks of a RICO violation." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d at 473.

An additional shortcoming of the plaintiff's putative association-in-fact "enterprise" is the Mendozas' inclusion as members. A RICO enterprise must be "distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). The Mendozas' "role" in the putative enterprise was their alleged complicity in trafficking the plaintiff to the United States, and then forwarding money to her parents in the Philippines. (*see e.g.*, Complaint, at ¶¶ 19-21; 28-31; and 35.c. & g.) The claimed enterprise, if defined to include the Mendozas, is indistinguishable from the alleged pattern of racketeering activity, and thus not a RICO enterprise at all. *Id.* The plaintiff's failure to allege a proper enterprise is fatal to her RICO claims, *Richmond v. Nationwide Cassel L.P.*, 52 F.3d at 647, and the Court should therefore dismiss Counts I and III of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Plaintiff's Complaint Fails to Allege a Pattern of Racketeering Activity.

The Court should dismiss the plaintiff's RICO and WOCCA claims for the additional reason that the Complaint fails to adequately plead a "pattern of racketeering activity." Courts "carefully scrutinize the pattern requirement to 'forestall RICO's use against isolated or sporadic

---

[8] *See also Williams v. Ford Motor Company*, 11 F. Supp.2d 983, 986 (N.D.Ill.1998) (citation omitted). ("[I]n order to adequately plead a claim under § 1962(c), the complaint must identify an 'association in fact' that is meaningfully different in the RICO context from the units that go to make it up.")

criminal activity . . . .'" *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d at 473. This is just such a case.

A "pattern of racketeering activity" consists, at a minimum, of two predicate acts of racketeering within a ten-year time-period, 18 U.S.C. § 1961(5); however, two such acts do not necessarily establish a "pattern." *Sedima v. Imrex Company, Inc.*, 473 U.S. 479, 496, n. 14 (1985). To fulfill the pattern requirement for a civil RICO claim, the plaintiff must satisfy what has become known as the "continuity plus relationship" test. "[T]he predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." *Jennings*, 495 F.3d at 473, *citing Midwest Grinding, Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992), *citing H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). Here, as in the "vast majority" of RICO pattern cases, there is no question that the alleged predicate acts are related. *Vicom*, 20 F.3d at 779. The question is whether the Complaint satisfies the continuity prong of the test, which serves to further Congress's intent that RICO target long-term criminality. *Jennings v. Auto Meter Prods. Inc.*, 495 F.3d at 473, *citing H.J., Inc.*, 492 U.S. at 242.[9]

In determining whether sufficient continuity exists to constitute a "pattern" of racketeering activity, Seventh Circuit courts evaluate the following factors: "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). No one factor is necessarily determinative; the Court must evaluate the Complaint's allegations "with the goal of 'achieving a

---

[9] "Continuity can be both a closed-and open-ended concept." *Id.* (internal quotation omitted). Closed-ended continuity refers to criminal behavior that has come to a close but endured for such a substantial period that its duration and repetition carries with it an implicit threat of continued criminal activity in the future. *Id., citing Midwest Grinding*, 976 F.2d at 1022-23.

10

natural and commonsense result, consistent with Congress's concern with long-term criminal conduct.'" *Jennings v. Auto Meter Prods., Inc.,* 495 F.3d at 473, *quoting Roger Whitmore's Auto Servs., Inc. v. Lake County, Illinois,* 424 F.3d 659, 673 (7th Cir. 2005).

Here, all but one of the *Morgan* factors favor dismissal. The Complaint alleges a single scheme to traffic and harbor the plaintiff as a domestic worker in the Calimlim home, while paying sub-standard wages for her services. There is a single victim, claiming discrete injuries from a discrete transaction. The plaintiff's allegation that the criminal activity spanned 19 years, while significant, cannot prevent dismissal. "[I]n order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time ***so that they can fairly be viewed as constituting separate transactions***, *i.e.*, transactions separated in time and place." *Morgan,* 804 F.2d at 975 (internal quotation omitted) (emphasis supplied). That just isn't the case here.

The first three alleged predicate acts – trafficking, harboring and forced labor (Complaint, ¶ 114.a.-c.) – cannot fairly be viewed as separate transactions. They are the means through which the solitary scheme to recruit the plaintiff for employment as a domestic worker was carried out. The remaining predicate acts described in the Complaint – vaguely alleged acts of mail and wire fraud – likewise cannot constitute a "pattern and racketeering activity," for at least three reasons. First and foremost, those alleged acts relate strictly to the soliciting recruitment/employment scheme alleged here. Second, courts in the Seventh Circuit view with considerable skepticism RICO claims that rely heavily on mail and wire fraud allegations to establish a pattern. *Id.,* at 475, *citing Midwest Grinding,* 976 F.2d at 1024-25 *and Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 781 (7th Cir. 1994). Finally, as discussed *infra*, the plaintiff failed to allege her fraud claims with particularity, as Fed. R. Civ. P. 9(b) requires.

11

Using the *Morgan* factors as a guide for its analysis, the Court is left with a question of common sense: Did Congress really intend for the RICO statute to cover a nuclear family - including three minor children who grew up in their parents' household and who, thereafter, occasionally returned home with laundry - that employed an illegal alien as a housekeeper? Of course not. If the Calimlims parents violated federal statute by allegedly bringing the plaintiff to the United States, misleading her as to her immigration status/options, and underpaying her for her work, the plaintiff has a federal, statutory, civil remedy (as well as state common law remedies), which includes fee-shifting (15 U.S.S. § 1595).

In sum, the plaintiff's Complaint cannot survive the careful scrutiny required of RICO claims. *Jennings v. Auto Meter Prods., Inc.*, 459 F.3d at 473-74. The Court should therefore dismiss Counts I and III of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Plaintiff's Mail and Wire Fraud Allegations Fail to Satisfy the Requirements of Fed. R. Civ. P. 9(b)

In order to establish mail or wire fraud under 18 U.S.C. §§ 1341 and 1343, a plaintiff must ultimately prove (1) that the defendants devised a scheme to defraud the plaintiff; (2) that the defendants used the United States mails or caused interstate wire communications to take place for the purpose of executing that scheme; and (3) that the defendants did so knowingly and with the intent to defraud. *Pereira v. United States*, 347 U.S. 1, 8-9 (1954); *see also United States v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993), *cert. denied*, 511 U.S. 1096 (1994). "Fed. R. Civ. P. 9(b) requires that a plaintiff plead 'all averments of fraud [with] particularity,' and this rule is of course applicable to allegations of fraud in a civil RICO complaint." *Midwest Grinding Co.*, 976 F.2d at 1020, *quoting Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991); *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1268 n. 6 (7th Cir. 1990); *see also Slaney*, 244 F.3d at 597.

12

To plead fraud with particularity, a plaintiff must identify "the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom*, 20 F.3d at 777 (internal quotations omitted). The Complaint does not come close to meeting this standard. With respect to mail fraud, the Complaint alleges that the defendants used the U.S. mails "in a manner as to constitute mail fraud . . . ." (Complaint, ¶ 114(d)) Purporting to offer specifics, the Complaint alleges that the defendants diverted, read or confiscated the plaintiff's mail, that they channeled the plaintiff's letters to her family through them, and that they paid her a "fraudulently miniscule 'salary.'" (*Id.*) With respect to alleged wire fraud, the Complaint makes general reference to unspecified wire communications relating to the plaintiff's fraudulent visa application 23 years ago, and then alleges that the defendants "used the wires" to control the plaintiff and secure her involuntary labor, and "defraud" her "of her rightfully earned wages." (Complaint, ¶ 114(e))

The Complaint's fraud allegations are defective, because they never identify "the who, what, when, where, and how: the first paragraph of any newspaper story." *Di Leo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. denied*, 498 U.S. 941 (1990) Who handled the plaintiff's mail in an improper manner, and how was it fraudulent? Who made phone calls about the fraudulent visa application, and what did he/she/they say that was fraudulent. What exactly was the alleged fraud, how was it allegedly perpetrated, and what did each defendant do to contribute to it?[10] This latter point is particularly important, because Rule 9(b) prohibits "lumping together" multiple defendants under a general accusation that they were participants in a scheme to defraud. The Complaint must inform each defendant of the nature of his or her alleged participation in the fraud and specify which defendants were involved in what activity. *Vicom*,

---

[10] If the plaintiff maintains that she did not receive her promised salary (*i.e.*, the defendants promised to pay *x*, but then paid only *y*), then she is not claiming fraud. She is claiming breach of contract.

13

20 F.3d at 778 (citations omitted). There is no excuse for the Complaint's inadequacies; Rule 9(b)'s heightened pleading standard requires "the plaintiff to do more than the usual investigation before filing [her] complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted).

Because the plaintiff's RICO claims rely in substantial part on inadequately pled fraud allegations, the Court should dismiss those claims under Rule 12(b)(6).

III. THE COMPLAINT FAILS TO ALLEGE A COGNIZABLE RICO CONSPIRACY UNDER 18 U.S.C. § 1962(d).

The plaintiff's conspiracy claim, set forth at Count II of the Complaint, fails for at least two reasons. First, because the Complaint fails to establish a violation of 18 U.S.C. § 1962(c), the conspiracy claim based on the same allegations must also fail. *Stachon v. United Consumers*, 229 F.3d at 677 (relying on *Midwest Grinding Co.*, 976 F.2d at 1026).

Moreover, the Complaint fails to allege facts sufficient to establish the existence of a RICO conspiracy. 18 U.S.C. § 1962(d) was never intended to criminalize an individual's mere association with an alleged enterprise. *Brouwer,* 199 F.3d at 965.[11] To state a claim under § 1962(d), the plaintiff must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren*, 156 F.3d at 732. Each defendant must agree to participate, and each defendant must agree that someone should commit the predicate acts. *Id.*

---

[11] *See also, United States v. Percival*, 756 F.2d 600, 610 (7th Cir. 1985) ("[M]ere association with conspirators, knowledge of a conspiracy, and presence during conspiratorial discussions is not sufficient to convict a person of conspiracy.").

14

"An agreement to join a conspiracy is highly personal; similarly, to participate in the conduct of an enterprise is also highly personal and active." *Brouwer*, 199 F.3d at 966. And, while agreement can be inferred from the circumstances, *United States v. Campione*, 942 F.2d 429, 438 (7th Cir. 1991), in order to violate § 1962(d) a defendant must be "aware of the essential nature and scope of the enterprise and [intend] to participate in it." *United States v. Stephens*, 46 F.3d 587, 592 (7th Cir. 1995). The conspiracy alleged here, between the Calimlim parents and their minor children, cannot stand. First, and foremost, "[m]inor children are not usually co-conspirators." *U.S. v. Jebara*, 313 F. Supp.2d 912, 919, n. 9 (E.D.Wis. 2004). To conspire one must agree, and to agree a person must choose. A child's actions are presumed not to reflect a mature capacity for choice. *Tison v. Arizona*, 481 U.S. 137, 171, n. 10 (1987).[12]

Furthermore, nothing in the Complaint suggests that three of the alleged conspirators – the three Calimlim children – had any awareness of the nature or scope of the claimed enterprise. A plaintiff who alleges conspiracy must specify the nature of the conspiracy and identify the defendants' role in the conspiracy with some particularity. *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 895-96 (N.D.Ill.1987); see also *Flourney v. Peyson*, 701 F. Supp. 1370, 1382 (N.D.Ill.1988) (plaintiff cannot merely plead that the defendants conspired; he must plead particular facts establishing the alleged conspiracy). Over the course of years the Calimlim children may have come to understand, on some level, that the plaintiff, who lived with and cared for them, was in the country illegally, and followed house rules designed to conceal her presence. But that is not enough. The plaintiff was part of their daily lives from the time they were ages 5, 8 and 11, respectively.

---

[12] The law of Wisconsin reflects this principle. For example, a minor lacks capacity to enter into a binding contract, which by definition, requires agreement between the notional contracting parties. *Schoenung v. Gallet*, 206 Wis. 52, 54, 238 N.W. 852, 852-53 (1931). Likewise, a juvenile under the age of 15 is not waived into adult court, absent special circumstances. See Wis. Stat. § 938.18(1).

What is missing here, and fatal to the plaintiff's conspiracy claim, are allegations which if accepted as true explain when the children's actions, by living the only life they ever knew, manifested an agreement with their parents to violate the RICO statute by keeping the plaintiff working in the parents' home against the her will. That's because Counts I through III of the Complaint are the proverbial square pegs. This case isn't about organized crime perpetrated through a RICO enterprise, or a conspiracy to violate the RICO statute. It is about a family that employed an illegal housekeeper, who claims that she was paid too little, and that she was deceived and/or coerced into staying in that job. There are remedies designed to address such circumstances, but RICO is not among them.

IV. THE COURT SHOULD DISMISS COUNT IV, BECAUSE THE PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION UNDER THE 13TH AMENDMENT TO THE UNITED STATES CONSTITUTION OR 18 U.S.C. § 1584.

Count IV of the Complaint asserts a claim for civil monetary relief for alleged violations of the plaintiff's rights under the Thirteenth Amendment to the United States Constitution, and for the defendants' alleged violation of 18 U.S.C. § 1854. The Court should dismiss Count IV, because its legal foundation is unsound.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts which, if proven, would sustain a recovery under some viable legal theory. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). Count IV fails, because "federal district courts have consistently held that the Thirteenth Amendment itself does not provide a private right of action for damages." *John Roe I v. Bridgestone Corporation*, 492 F. Supp.2d 988, 997 (S.D. Ind. 2007), citing *Bhagwanani v. Howard Uni*versity, 355 F. Supp.2d 294, 301 & n. 5 (D.D.C. 2005); *Jane Doe I v. Reddy*, 2003 WL 23893010, at *10 (N.D.Cal. Aug. 4, 2003); *Doe I v. The Gap, Inc.*, 2001 WL 1842389, at *16-18 (D.N. Mar. I. Nov. 26, 2001); *Del Elmer v.*

16
Case 2:08-cv-00810-LA   Filed 12/15/08   Page 16 of 20   Document 48

*Metzger*, 967 F. Supp. 398, 402 (S.D.Cal. 1997); *Holland v. Board of Trustees of Univ. of District of Columbia*, 794 F. Supp. 420, 424 (D.D.C. 1992); *Sanders v. A.J. Canfield Co.*, 635 F. Supp. 85, 87 (N.D.Ill. 1986); *Baker v. McDonald's Corp.*, 686 F. Supp. 1474, 1480 n. 12 (S.D.Fla. 1987), *aff'd*, 865 F.2d 1272 (11th Cir. 1988); *Westray v. Porthole, Inc.*, 586 F. Supp. 834, 838-39 (D.Md. 1984); and *Turner v. Unification Church*, 473 F. Supp. 367, 373-74 (D.R.I.1978), aff'd, 602 F.2d 458 (1st Cir. 1979). In reaching this conclusion, courts reason that state law affords ample protection to redress private wrongdoing of the nature contemplated by the Thirteenth Amendment, see e.g., *John Roe I*, 492 F. Supp.2d at 998; *Turner*, 473 F. Supp. at 473-74; *Jane Doe I v. Reddy*, 2003 WL 23893010 at * 10, and that where Congress has found it appropriate to authorize civil remedies for Thirteenth Amendment violations, it has done so expressly. *See e.g.*, 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, and 42 U.S.C. § 1985;[13] *and Bhagwanani v. Howard Univ.*, 355 F. Supp.2d 294, 301 (D.D.C. 2005) (discussing same).

The plaintiff's attempt to invoke 18 U.S.C. § 1584 in support of a civil claim for relief is similarly unavailing. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval* 532 U.S. 275, 286, 121 S.Ct. 1511 (2001), *citing Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (remedies available are those "that Congress enacted into law"). A court's "task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id., citing Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979). Without such Congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a

---

[13] The plaintiff's claim does not fall within any of these statutes.

policy matter, or how compatible with the statute." *Id.* at 286-87, *citing Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145, 148 (1985); *Transamerica Mortgage Advisors, Inc.,* 441 U.S. at 23; and *Touche Ross & Co. v. Redington,* 442 U.S. at 575-576.

By its plain language, 18 U.S.C. § 1854's coverage is exclusively criminal:

> **§ 1584. Sale into involuntary servitude.** Whoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held, shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

18 U.S.C. § 1584 neither creates nor authorizes a private cause of action, and nothing in the statutory language remotely suggests a Congressional intent to do so. Under controlling Supreme Court precedent, the Court is not at liberty to create one. *Alexander v. Sandoval,* 532 U.S. at 286-87.

In sum, there is no basis for the plaintiff's assertion that she has a "claim for relief under the private cause of action implied by the Thirteenth Amendment of the U.S. Constitution, and under 18 U.S.C. § 1584, both of which prohibit peonage and involuntary servitude." (Complaint ¶ 131). The Court should therefore dismiss Count IV of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

V. THE COURT SHOULD STAY COUNTS V AND VI UNTIL RESENTENCING IS COMPLETE IN THE CALIMLIM PARENTS' CRIMINAL CASE.

Count V and VI assert claims under 18 U.S.C. § 1595 for the defendants' alleged violations 18 U.S.C. §§ 1590 (Count V – trafficking) and 1589 (Count VI – forced labor). The Court should stay these actions until the Calimlims are resentenced in the underlying criminal action, as the operative statute directs.

18 U.S.C. § 1595 provides in relevant part:

> (b)(1) Any civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.
> (2) In this subsection, a "criminal action" includes investigation and is pending until final adjudication in the trial court.

This case plainly relates to the same occurrence that forms the basis of the pending criminal proceeding, *United States v. Calimlim, et al.,* United States District Court for the Eastern District of Wisconsin Case No. 04-CR-248. The claimant in this action, Ms. Martinez, was treated as the victim in that criminal matter; indeed, Judge Randa entered a $916,635.16 restitution award in her favor. *See* Case No. 04-CV-248, Docket Item No. 263.[14] A stay is appropriate under § 1595(b)(1), because in August, the Seventh Circuit reversed the Calimlims' sentences and remanded the criminal case to the trial court for further proceedings. *United States v. Calimlim, et al.,* 538 F.3d at 718. Thus, there is no final adjudication in the trial court in the criminal matter, *see Andrews v. U.S.,* 373 U.S. 334, 340, 83 S.Ct. 1236, 1240 (1963) (Where resentencing is appropriate, there could be no final disposition of proceedings until were resentencing), and § 1595(b)(1) requires that this action be stayed.

## CONCLUSION

For the reasons set forth above, defendants Jefferson N. and Elnora M. Calimlim respectfully request that the Court dismiss Counts I through IV of the plaintiff's Complaint pursuant Fed. R. Civ. P. 12(b)(6), and stay Counts V and VI of the Complaint pending final adjudication of the Calimlim parents' criminal matter before the trial court.

---

[14] The Court may take judicial notice of the court of appeals' decision and the restitution order in the related criminal proceeding without converting the instant motion into a motion for summary judgment under Fed. R. Civ. P. 56. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994).

Dated this 15th day of December, 2008.

                    Respectfully submitted,

                    HURLEY, BURISH & STANTON, S.C.

                    By: _____
                    Andrew W. Erlandson
                    State Bar ID No. 1029815
                    *Attorneys for defendants Jefferson N. Calimlim and Elnora M. Calimlim*
                    33 East Main Street, Suite 400
                    Madison, WI 53703
                    (608) 257-0945 tel
                    (608) 257-5764 fax
                    aerlandson@hbslawfirm.com

F:\-clients\calimlim\Martinez v\Brief in Support of Motion to Dismiss.wpd