# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

IRMA MARTINEZ,

      Plaintiff,

v.                              Case No.: 2:08-CV-00810

JEFFERSON N. CALIMLIM, *et al.*

      Defendants.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

      Defendants Christina Calimlim and Jefferson M. Calimlim, by their attorneys, respectfully submit this memorandum in support of their motion to dismiss Counts II through VI of the Complaint and alternative motion for a more definite statement.

## <u>INTRODUCTION</u>

      Christina ("Tina") Calimlim and Jefferson M. ("Jeff") Calimlim were, respectively, five and eleven years old when the plaintiff, Irma Martinez, came to the United States and began her stay with the Calimlim family.[1] (Complaint, ¶¶ 10-12). Plaintiff was an illegal alien, and the parents of Tina and Jeff were convicted in 2006 of obtaining and conspiring to obtain forced labor, and harboring and conspiring to harbor an alien for private financial gain. (Complaint, ¶ 2).

---

[1] Their brother, Christopher Jack ("Jack") Calimlim, is also a defendant. He was eight years old at that time. The Complaint refers to all of them collectively as the "Children Defendants."

With little more than allegations based on the parents' criminal proceedings[2] and vague, conclusory assertions as to their behavior beginning as young minors, plaintiff asserts that the Children Defendants acted as racketeers who violated both federal and state law. Plaintiff goes on to assert, on the same general, undeveloped allegations, that the Children Defendants engaged in involuntary servitude, trafficking and forced labor, apparently even as young children.

Shorn of its unnecessary, improper rhetoric and series of conclusory assertions, however, the Complaint fails to state a claim at all. None of the factual allegations that need to be taken as true properly describe:

- racketeering activity;

- a cognizable enterprise under RICO;

- a pattern of racketeering activity;

- the Children Defendants' operation or management of an enterprise through a pattern of racketeering activity; or

- a conspiracy involving the Children Defendants to violate racketeering laws.

Similarly, the conclusory allegations of imprisonment, harboring and trafficking, made against the Children Defendants, are insufficient as a matter of law, and fail accordingly. Simply stated, Plaintiff's attempt to convert the criminal convictions of the Calimlim Parent Defendants into a basis for serious civil claims against the Calimlim children does not satisfy requisite pleading standards. Plaintiff's allegations are so deficient as to require dismissal of all counts of the Complaint against Tina Calimlim and Jeff Calimlim, or, in the alternative, must be made more

---

[2] Unlike his parents, Jeff Calimlim was acquitted of charges of conspiring to harbor and conceal an alien for purpose of financial gain, and knowingly and willfully making a false material statement. He was convicted only of harboring an alien under 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (B)(ii). *See* Nov. 21, 2006 Amended Judgment in a Criminal Case, 04-CR-0248 (E.D. Wis.). The Court may take judicial notice of Jeff Calimlim's acquittals without converting the instant motion into a motion for summary judgment under Fed. R. Civ. P. 56. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

detailed and clear before they should be called upon to respond to Counts II through VI of the Complaint.

<u>**ALLEGATIONS OF THE COMPLAINT**</u>

The Complaint, 39 pages in length, alleges the Calimlim parents' role in bringing one person, the plaintiff, to the United States in 1985 and the circumstances surrounding their conviction in 2006 for obtaining and conspiring to obtain forced labor, and harboring and conspiring to harbor an alien for private financial gain involving that one person. (Complaint, ¶¶ 2, 7). While the Complaint offers specific allegations as to the Parent Defendants (particularly Mr. Calimlim) in this regard, it is tellingly lacking in offering specifics as to the Children Defendants, particularly concerning the years **after** they reached the age of majority and could be held responsible for their conduct. As to their adult years, the Complaint notes that Tina and Jeff were each away at college for four years. (Complaint, ¶¶ 10, 12). Tina only "returned to reside in the home periodically, later moving to San Francisco." (Complaint, ¶ 12). When not in college, the Children Defendants are conclusorily alleged to have "forced" the plaintiff to do laundry, prepare meals and clean (Complaint, ¶¶ 54-56), but no facts are alleged to support that conclusion or to provide specifics of any kind.

Other allegations identifying the Children Defendants offer similar conclusory assertions, and fail to provide any time frame to separate their adulthood from their actions going back to young childhood. (*See, e.g.*, Complaint, ¶¶ 36(c), 57, 71-74, 76-77, 79).

As if this form of artful pleading were not enough, the Children Defendants are lumped into one blanket assertion after another that "Defendants and Co-conspirators" committed acts over a period of nineteen years, thus providing no disclosure to any of the Children Defendants

3

Case 2:08-cv-00810-LA   Filed 12/17/08   Page 3 of 26   Document 55

as to what each of them personally is alleged to have done, or at what point in time, or to separate their parents' conduct from their own.  (*See, e.g.,* Complaint, ¶¶ 39-68).

The Complaint uses these generalized assertions to support its allegation of a 19-year conspiracy of Calimlim family members (including grandparents in the Philippines, one of whom died in 1993 (Complaint, ¶ 21)) and their alleged racketeering enterprise:  the "Human Trafficking and Alien Harboring Enterprise."  (Complaint, ¶ 19).  On these allegations, each of the Children Defendants, including Tina Calimlim and Jeff Calimlim, are alleged to have been, from young ages, members of the alleged racketeering enterprise, and to have acted as racketeering co-conspirators (Count II), participants in the enterprise through racketeering activities (Count III), and violators of federal criminal laws against involuntary servitude (Count IV), trafficking (Count V), and forced labor (Count VI).

## ARGUMENT

## I.    LEGAL STANDARDS.

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court made it clear that a plaintiff is required, under Rule 8(a)(2), to make a "showing" of entitlement to relief. As the Court explained, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.*, at 1965 n.3.

Therefore, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*, at 1964-1965.  The standard means that a complaint must "raise a reasonable expectation that discovery will reveal evidence" confirming the claim for relief. *Id.*, at 1959.

4

It is apparent that the Complaint in this case does not satisfy the *Twombly* standard and fails to state a claim under Rule 12(b)(6) as a result. Plaintiff's allegations are replete with the "labels" and "conclusions" discredited in *Twombly*, and lean heavily on "formulaic recitation of the elements" of the claims alleged, rather than providing basic factual content to indicate why Plaintiff's claims against the Children Defendants are plausible under *Twombly*'s standards.

Even more troubling, the Complaint does not stop with conclusory assertions in the stead of necessary facts; it is filled with repeated inflammatory rhetoric that appeals to distraction and confusion. These techniques ignore *Twombly*'s holding that factually barren allegations of the type provided should not be permitted to spawn "sprawling, costly and hugely time-consuming" discovery that would likely intimidate meritorious defendants to settle. *Iqbal v. Hasty*, 490 F.3d 143, 156-57 (2d Cir. 2007).

RICO cases particularly come within *Twombly*'s reach. *See Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 803-04 (7th Cir. 2008) ("If discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible [RICO] claim."); *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 473 (7th Cir. 2007) (applying *Twombly* in a RICO case, dismissing action for lack of allegation of facts that suggest a pattern of activity and observing that the case "lacks any of the hallmarks of a RICO violation"); *Westerfield v. Quizno's Franchise Co., LLC*, 527 F. Supp. 2d 840, 845 (E.D. Wis. 2007) (dismissing RICO claim in light of *Twombly* because, absent a complaint setting "forth sufficient facts to show plausible grounds exist for believing a violation has occurred," a case should not be permitted to continue into its inevitably costly and

protracted discovery phase); *RXUSA v. Capital Returns, Inc*., No. 06-C-00790, 2007 WL 2712958 at *3 (E.D. Wis. Sept. 14, 2007) (dismissing RICO claim on *Twombly* grounds).[3]

## II.     THE COMPLAINT'S RICO CLAIM FAILS AS A MATTER OF LAW.

"RICO creates a civil cause of action for persons whose business or property[4] has been injured by organized, long-term criminal activity."  *Holub v. Knauf*, No. 04-C-1026, 2005 WL 1269036 at *2 (E.D. Wis. May 27, 2005) (Adelman, J., presiding) (*citing Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992)).  RICO, in fact, has a "limited purpose":  it functions as "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity."  *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).  "Congress passed RICO in an effort to combat organized, long-term criminal activity," and it never intended to allow plaintiffs to turn claims of lesser dimension into federal racketeering actions. *Auto Meter Products, Inc.,* 495 F.3d at 472.

The elements of a RICO violation are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Id.*  The complaint, however, fails to satisfy any of these elements, particularly with respect to the Children Defendants. Plaintiff's allegations not only lack necessary factual specificity,[5] but, in the case of the "enterprise" and "pattern" requirements, demonstrate that essential elements are lacking and plaintiff's racketeering charges

---

[3] As her Complaint concedes, the plaintiff had nearly four years to pursue claims against the Children Defendants but failed to do so until she filed this action.  She and her attorneys have had **more than ample time** to provide the necessary factual detail (if it exists at all) to support her racketeering charges.  Instead, the conclusory nature of the Complaint and its reliance on inflammatory rhetoric and generalizations, rather than on specific factual allegations against the Children Defendants, seems a transparent effort to grasp onto a claim not fully time barred in the hope of coercing additional recovery beyond that which the plaintiff has received in criminal restitution.

[4] The requirement that the injury be to the plaintiff's "business or property" means that the plaintiff must show a proprietary type of damage.  *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir.), *cert. denied*, 48 U.S. 1981 (1988).  As a result, the economic aspects of personal injuries, such as loss of earnings due to physical injury or pecuniary loss from emotional distress, are not compensable under RICO.  *Id.*  The same is true for loss of income resulting from an inability to pursue employment opportunities due to false imprisonment.  *See discussion in Evans v. City of Chicago*, 434 F.3d 916, 925-27 (7th Cir. 2006).

[5] Even before *Twombly*, the Seventh Circuit required more than conclusory assertions to state a claim under RICO. *Slaney v. International Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001).

against the Children Defendants are fundamentally defective. As Chief Judge Randa instructed in *RXUSA, Inc.,* 2007 WL 2712958, at *5, "RICO was not intended 'to fit a square peg in a round hole….'" (*citing Midwest Grinding Corp.,* 976 F.2d, at 1025). That unworkable contortion is precisely what the Complaint seeks to accomplish.

**A. Plaintiff's Allegations of a RICO "Enterprise" are Defective.**

Plaintiff's RICO claim fails in its attempted assertion of an "enterprise" under 18 U.S.C. § 1961(4). Proper pleading of such an "enterprise" is an essential element in civil RICO because the essence of the RICO offense is a defendant acting through or upon some enterprise. *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995).

A RICO enterprise is "an on-going 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Id.* at 644 (*quoting Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)). Here, plaintiff asserts "an association in fact" as the person, as there is no alleged legal entity providing structure to serve as the enterprise.[6] Nonetheless, although an enterprise can be formal or informal, every enterprise must have structure, continuity, and requisite common purpose. *Emry*, 910 F.2d, at 1440. As the Seventh Circuit indicated in *Emery v. American General Finance, Inc.*, the enterprise must bear some "resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." 134 F.3d 1321, 1324 (7th Cir. 1998); *accord Limestone Devel.*, 520 F.3d at 797, 804-05.

---

[6] Plaintiff is no doubt aware of the required person–enterprise separation under § 1962(c), the statutory basis for Count I of the Complaint. In Judge Posner's words, "you cannot associate with yourself." *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985). Because only the person, and not the enterprise, is liable under § 1962(c), the "person" and "enterprise" must be separate entities. *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985). Plaintiff therefore attempts to avoid the concern by constructing an association-in-fact enterprise.

Here, it is evident that the plaintiff's suggested enterprise does not have the requisite structure, differentiation of roles and continuity necessary to constitute an enterprise under RICO. Plaintiff's claimed "association-in-fact" enterprise—the extended family of Calimlim grandparents in the Philippines, the Calimlim parents and their children—which the Complaint pejoratively labels the "Human Trafficking and Alien Harboring Enterprise," does not begin to withstand scrutiny under RICO. It lacks the requisite structure. It lacks the necessary continuity. *Limestone Devel.*, 520 F.3d at 804 (association-in-fact "enterprise" must have ongoing organization, including associates who function as a continuing unit); *see also* discussion in *Merryman Excavation, Inc. v. International Union of Operating Engineers*, No. 06-C-5160, 2007 WL 1232198 at *5 (N.D. Ill. Apr. 25, 2007). Most obviously, it lacks any semblance of common sense, as it tries to establish a RICO enterprise existing for 19 years involving kindergarten and elementary school-aged children, then later young adults who left the family residence to attend college, and even a far-away, long-deceased grandparent. It is a contrivance of the worst sort, even in the annals of "RICO jurisprudence," which is replete with examples of failed attempts to establish RICO-qualifying enterprises. *Budgetel Inns v. Micros Systems,* No. 97-CV-301, 2002 WL 32123532 at *28 (E.D. Wis. Jan. 30, 2002). As the Parent Defendants' briefing on this issue details, simply belonging to a three-generation family does not begin to qualify individuals as associated for RICO purposes, and there appears to be no authority recognizing such a family, especially one involving minor children, as a RICO enterprise. (*See* Docket No. 54, pp. 7-9).

Further, the Human Trafficking and Alien Harboring Enterprise alleged is, as acknowledged by its own title, nothing more than a combination of the alleged predicate acts and

asserted pattern of wrongdoing—the alleged conspiracy itself.[7] It is, as such, nothing more than the alleged pattern of racketeering activity itself and therefore cannot serve as a RICO enterprise at all. *Emry*, 910 F.2d, at 1440.

For these reasons, plaintiff's alleged enterprise fails of its own basic misconstruction.

**B. The Complaint Does Not Properly Allege a Pattern of Racketeering Activity.**

"Pattern of racketeering" is another term of art in RICO. At minimum, a plaintiff must demonstrate that at least two predicate acts of racketeering occurred within a 10-year period. 18 U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex, C.L.,* 473 U.S. 479, 496 n.14 (1985). Two predicate acts alone, however, rarely are enough to establish a pattern. *Auto Meter Products*, 495 F.3d at 472. "[C]ourts carefully scrutinize the pattern requirement to 'forestall RICO's use against isolated or sporadic criminal activity….'" *Id.* at 473 (*quoting Midwest Grinding,* 976 F.2d, at 1022).

An alleged "[p]attern of racketeering" must satisfy the "continuity plus relationship test." *Midwest Grinding,* 976 F.2d, at 1022. The predicate acts must not only be related to one another (the relationship prong), but must pose a threat of continued criminal activity (the continuity prong). *Id.* Continuity is both a closed- and open-ended concept. *Id.* (*quoting H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 241 (1989)). Where, as here, a complaint alleges a closed-ended period of racketeering, the continuity element requires a series of related predicate acts lasting a substantial period of time and evidencing such duration and repetition that there is an implicit threat of continued criminal activity in the future. *Id.* at 1022-23.

---

[7] The Seventh Circuit has indicated that "a conspiracy is not a RICO enterprise unless it has some enterprise-like structure…." *Limestone Devel.*, 520 F.3d, at 804. As in *Limestone Devel.*, the Complaint in this case does not allege "anything to indicate a structure of any kind." *Id.* "Without a requirement of structure, 'enterprise' collapses to 'conspiracy,' even in the context of an associated in fact enterprise." *Id.* at 805. Accordingly, an enterprise must have an on-going structure with evidence that various associates function as a continuing unit over time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making. *Id.*

Because the Complaint alleges racketeering activity which has come to a close, the Court is to consider "(1) the number and variety of the predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." *Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 962-63 (7th Cir. 1996).

As this Court has recognized, only rarely does a single scheme (which is all that the Complaint tries to allege) satisfy the continuity requirement. *Budgetel Inns,* 2002 WL 32123532, at *26. Further, only a single victim and a distinct injury from one extended episode are involved.[8] The absence of multiple victims, schemes and injuries contradicts plaintiff's conclusory assertion of a "pattern" of racketeering activity. Even though plaintiff tries to shore up this defect by referencing, in conclusory fashion, an unspecified number of acts of mail and wire fraud, that effort does not change the analysis. *See RXUSA, Inc.,* 2007 WL 2712958, at *8 ("multiple acts of mail and wire fraud which create a single harm in a single transaction cannot constitute a pattern under RICO"). Similarly, Plaintiff's cover-up allegations do nothing to extend the duration of an underlying scheme or provide evidence of "pattern" for RICO purposes. *Auto Meter Products,* 495 F.3d at 474.

As such, the Complaint does not demonstrate the particular type of continuity that is essential to a RICO claim, and plaintiff's case "lacks the hallmarks of a RICO violation." *Auto Meter Products*, 495 F.3d at 473. Given the nature of plaintiff's allegations, the absence of the requisite pattern would not be correctable by allowing further pleading, and so dismissal with prejudice of plaintiff's RICO claim against Tina Calimlim and Jeff Calimlim is warranted.

---

[8] Although the Complaint includes allegations of widespread human trafficking in the world (Complaint, ¶¶ 14-18), the Complaint does not allege that any defendant ever engaged in or threatened wrongdoing to anyone except the plaintiff.

**C. Plaintiff's Allegations of Predicate Acts are Deficient.**

Simply asserting, as the Complaint does, that the Children Defendants have violated federal statutes does not begin to provide predicate acts sufficient to survive Rule 12 analysis. For example, the Complaint does little more than suggest that the Children Defendants have somehow contributed to wire fraud by using a separate telephone line at the home. (Complaint, ¶ 114(e)). Such assertions simply make no sense under *Twombly* and reveal the overreaching nature of plaintiff's attempts to dress up prior events as racketeering.

Besides insufficiently specifying what the Children Defendants did, plaintiff's assertions of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 lack any measure of required particularity under Rule 9(b). "Fed. R. Civ. P. 9(b) requires that a plaintiff plead 'all averments of fraud [with] particularity' and this rule is, of course, applicable to allegations of fraud in the civil RICO complaint." *Midwest Grinding,* 976 F.2d, at 1020 (*quoting Graue Mill Devel. Corp. v. Colonial Bank & Trust Co. of Chicago,* 927 F.2d 988, 992 (7th Cir. 1991)). The policy justifications for this requirement are obvious: "Rule 9(b) insures that a plaintiff have some basis for his accusations of fraud before making those accusations, and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes." *Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Commission*, 219 F.R.D. 457, 460 (W.D. Wis. 2003).

There is no identification in the Complaint of "the person who made the [alleged] misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777 (7th Cir. 1994); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. denied*, 498 U.S. 941 (1990) (finding necessary "the who,

11

what, when, where, and how" of any alleged fraud). Nor is there any explanation as to why such asserted use of the mails or wire could even constitute an actionable misrepresentation. *See Maryland Staffing Services, Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1500-1501 (E.D. Wis. 1996) (rejecting similar "generic" allegation structure). Further, to permit such conclusory allegations, tossing all defendants together, without providing any such specification, is precisely what Rule 9(b) is intended to prohibit. *RXUSA, Inc.* is again instructive. "For a complaint to satisfy Rule 9(b)'s pleading requirements, it must reference the individual or individuals who made fraudulent representations, rather than referring to the 'individual Defendants,' which, in essence, refers to them as a generalized group." *RXUSA, Inc.*, 2007 WL 2712958, at *6; *see also Decatur Ventures, LLC, v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 840-41 (S.D. Ind. 2005) (rejecting similarly unspecified accusations of wire fraud).

The remarkable impropriety and unfairness of plaintiff's conclusory and overwhelmingly vague allegations further evidence the lengths to which the Complaint attempts to end run fundamental pleading requirements.

**D. The Complaint Does Not Properly Allege a RICO Conspiracy.**

In order to be responsible for conspiring under § 1962(c), a defendant must make a knowing agreement to facilitate the activities of the operators or managers of the enterprise, i.e., knowingly agree to perform services of a kind that facilitates the activities of those who are operating or managing the enterprise in an illegal manner. *United States v. Cummings*, 395 F.3d 392, 397-98 (7th Cir. 2005). As the Court explained in *Brouwer v. Raffensperger, Hughes & Co.*:

> [O]ne cannot conspire to violate subsection (c) by agreeing that somehow an enterprise should be operated or managed by someone. That would impose a meaningless requirement and cast a frighteningly wide net. Rather, one's agreement must be to knowingly facilitate the activities of the operators or

managers to whom (c) applies. One must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner. It is an agreement, not to operate or manage the enterprise, but personally to facilitate the activities of those who do.

199 F.3d 961, 967 (7th Cir. 2000). No such allegations are made against the Children

Defendants, nor could they be, given the Complaint's disclosure of how the Children Defendants

were all young children at the time the alleged conspiracy commenced. "Minor children are not

usually co-conspirators." *U.S. v. Jebara*, 313 F. Supp. 2d 912, 919 n.9 (E.D. Wis. 2004). This is

because "[a] child's actions are presumed not to reflect a mature capacity for choice." *Tison v.*

*Arizona*, 481 U.S. 137, 171 n.10 (1987).

In fact, aside from the repeated conclusory label of "conspiracy," the Complaint fails to

provide necessary disclosure of the particulars of how the Children Defendants could even agree

to become members of any conspiracy. Did they begin the moment the plaintiff arrived in their

home, while they were in kindergarten and elementary school? If not, then when? Who else

participated and when? What was the purpose of the conspiracy? Who left the conspiracy and

when? To ask such questions is to illustrate just how far the allegations of the Complaint are

removed from the level of pleading necessary to provide fair notice to the Children Defendants

of the basis for the racketeering conspiracy claim brought against them.

Accordingly, just as other essential elements of plaintiff's RICO claim fail, so do

plaintiff's allegations of conspiracy against the Children Defendants.

## III.  THE COMPLAINT FAILS TO SATISFY PLEADING REQUIREMENTS UNDER THE WISCONSIN ORGANIZED CRIME CONTROL ACT.

As deficient as plaintiff's allegations are under RICO, they are even more so as to

Christina Calimlim and Jeff Calimlim under the Wisconsin Organized Crime Control Act

("WOCCA"). WOCCA analysis largely follows that under RICO, as most provisions are

analogous. *Brunswick Corp. v. E.A. Doyle Mfg. Co.*, 770 F. Supp. 1351, 1363 (E.D. Wis. 1991).

13

Accordingly, the "enterprise," "racketeering activity," and "pattern" analyses under RICO discussed above also apply to plaintiff's WOCCA claims. *Id.* (pattern); *Grove Holding Corp. v. First Wisconsin Nat. Bank of Sheboygan*, 803 F.Supp. 1486, 1503 (E.D. Wis. 1992) (predicate acts); *State v. Judd*, 147 Wis.2d 398, 401 (Ct. App. 1988) (enterprise).

WOCCA, however, contains no counterpart to the conspiracy component of 18 U.S.C. § 1962(d). Accordingly, plaintiff attempts to allege the Wisconsin equivalent of a § 1962(c) claim, pursuant to § 946.83(3): "No person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity." This section requires proper allegations that Christina Calimlim and Jeff Calimlim actually conducted or participated in an enterprise through a pattern of racketeering activity, but the Complaint provides only conclusory assertions of such conduct or participation without providing any facts to support them. These bare allegations crumble under the weight of *Twombly*, and appear half-hearted given that the plaintiff has not even tried to allege a § 1962(c) claim, the direct counterpart to § 946.83(3), against any of the Children Defendants.

The gross lack of specifics offered for the WOCCA count again demonstrates plaintiff's intent to assert a theory of recovery irrespective of lack of facts to support it. In fact, nothing in the plaintiff's WOCCA count provides the slightest indication of what conduct Christina Calimlim or Jeff Calimlim has undertaken to subject them to liability under § 946.83(3).

Plaintiff's allegations also totally fail to satisfy the "full participation" test under § 1962(c), as mandated in *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993): "'in order to 'participate in the conduct' of a criminal enterprise for the purposes of RICO liability, a defendant must exercise some role in the direction of the enterprise.'" *See also James Cape & Sons Company v. PCC Construction Company*, 453 F.3d 396, 401 (7th Cir. 2006) (noting that

mere participation in the activities of the enterprises is insufficient; the defendant must participate in the **operation or management** of the enterprise). "'Simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c).'" *Decatur Ventures*, 373 F.Supp.2d, at 837 (*quoting Goren*, 156 F.3d at 728).

The Seventh Circuit has recently confirmed that a person must have had "some part in directing the affairs of an enterprise before he or she can be responsible under § 1962(c); thus, the need for a defendant's participation in the actual operation or management of an enterprise. *Cummings*, 395 F.3d, at 397. Such allegations against Tina Calimlim and Jeff Calimlim are nowhere to be found.

As with her RICO claims, plaintiff also makes no effort to particularize her asserted predicate acts under WOCCA, much less separate each defendant so that each knows the circumstances of the offenses alleged against him or her. Instead, the Complaint continues its practice of lumping together "Defendants and Co-conspirators" (Complaint, ¶ 129) so that no defendant can properly develop defenses based on statute of limitations, lack of statutory retroactivity, minor status of the Children Defendants, and the like. Accordingly, plaintiff's pleading of predicate acts is deficient as a matter of law for the reasons discussed above.

Moreover, whether conclusorily alleged or not, the claimed violations of 18 U.S.C. §§ 1589 and 1590 (Complaint, ¶ 114) cannot form predicate acts under WOCCA because they were not "specified in 18 USC § 1961(1) in effect as of April 27, 1982." Wis. Stat. § 946.82(4). Likewise, some of the activities specified in 8 U.S.C. § 1324 may not have been part of that statute as of 1982 and so would not constitute "racketeering activity" under § 946.82(4).

All of these defects call for the dismissal of plaintiff's WOCCA count with prejudice.

## IV. PLAINTIFF'S RACKETEERING ALLEGATIONS LACK NECESSARY DEFINITENESS.

Civil accusations of the serious nature that plaintiff alleges require a level of definiteness that her Complaint lacks. Not only must the allegations be specific in nature, for the reasons discussed above, but they must be so for **each** defendant. Plaintiff's repeated technique of lumping together "Defendants and Co-conspirators" improperly fails to disclose what each defendant is alleged to have done.

The lack of disclosure is especially troubling in the context of plaintiff's RICO and WOCCA claims, with plaintiff asserting that Tina Calimlim and Jeff Calimlim acted as racketeers without offering either the factual explanation or elemental specifications to allow the Court to look beyond alleged ultimate conclusions and scrutinize her accusations. The Complaint "does not specify the nature of the predicate acts to a degree that will allow [Tina Calimlim and Jeff Calimlim] to comprehend the specific acts to which they are required to answer." *Holub*, 2005 WL 1269036, at *2 (*quoting Ray v. Karris*, 780 F.2d 636, 645 (7th Cir. 1985).[9] Conclusory allegations "'are of no consequence'" and do not provide "'the necessary minimum factual allegations.'" *Id.*

In such circumstances, courts commonly utilize RICO case statements as part of their gatekeeping function to ensure that racketeering allegations are well formed before such expensive, *in terrorem* litigation is allowed to continue. *See* RICO Business Disputes Guide (CCH), ¶ 7453, RICO Case Statements (May 1, 1990) ("Civil RICO case statements may prove

---

[9] Plaintiff's lack of necessary disclosures also prejudices the Children Defendants' ability to raise other dispositive issues, such as statute of limitations, at the pleadings stage. As this Court has noted, the four-year statute of limitations for a civil RICO claim "begins to run when the plaintiff discovers or should have discovered the injury, even if she has not yet discovered the pattern of racketeering." *Kuhn v. Kerhwald*, No. 05-C-1228, 2006 WL 3404771 at *3 (E.D. Wis. Nov. 22, 2006); *see also Barry Aviation,* 219 F.R.D., at 463-63 (barring RICO claims without leave to amend because plaintiff knew or should have known of his injury more than four years before filing of complaint). The vague assertions of the complaint deprive Tina Calimlim and Jeff Calimlim from exposing the facts to this statute of limitations scrutiny at this time, before substantial legal expenses are incurred.

16

to be useful devices for the efficient and orderly disposition of civil RICO litigation" pursuant to Rules 1, 11, 12(e), 16, and 83). *See U.S. Markets, Inc. v. Irvine*, 298 F. Supp. 2d 743, 745 (N.D. Ill. 2004) (stating that "all parties filing RICO claims must file a RICO case statement" and utilizing a 20-part RICO case statement form); *Rose v. Mony Life Ins. Co.*, 82 F. Supp. 2d 920, 926 (N.D. Ill. 2000) (requiring RICO case statement); *see also* RICO Standing Order of Former Chief Judge Evans (attached as Exhibit A); *Langley v. American Bank of Wisconsin*, 738 F. Supp. 1232, 1244 (E.D. Wis. 1990) (vague assertions do not comply with RICO Standing Order).

The RICO and WOCCA allegations in the complaint are deficient as a matter of law for the reasons discussed above and the RICO claims should be dismissed with prejudice. Alternatively, however, requiring plaintiff to provide a RICO case statement, if the Court allows repleading, is the minimum relief to which Tina Calimlim and Jeff Calimlim are entitled.

## V. COUNT IV OF THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE THIRTEENTH AMENDMENT OR 18 U.S.C. § 1584.

Count IV of plaintiff's Complaint asserts a private cause of action on the basis of the Thirteenth Amendment. This claim fails as a matter of law because, as courts within the Seventh Circuit and elsewhere have repeatedly recognized, "the Thirteenth Amendment itself does not provide a private right of action for damages." *John Roe I. v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 997 (S.D. Ind. 2007), *citing Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 301 & n. 5 (D.D.C.2005); *Jane Doe I v. Reddy*, No. C-02-05570, 2003 WL 23893010, at *10 (N.D.Cal. Aug. 4, 2003) (granting motion to dismiss); *Doe I v. The Gap, Inc.*, No. CV-01-0031, 2001 WL 1842389, at *16-18 (D.N. Mar. I. Nov. 26, 2001) (granting motion to dismiss); *Del Elmer v. Metzger*, 967 F. Supp. 398, 402 (S.D.Cal.1997) (granting motion to dismiss); *Holland v. Board of Trustees of Univ. of District of Columbia*, 794 F. Supp. 420, 424 (D.D.C.1992) (granting

motion to dismiss); *Sanders v. A.J. Canfield Co.,* 635 F. Supp. 85, 87 (N.D.Ill.1986) (granting motion to dismiss and awarding sanctions under Rule 11); *Baker v. McDonald's Corp.,* 686 F. Supp. 1474, 1480 n. 12 (S.D.Fla.1987) (granting motion to dismiss), *aff'd,* 865 F.2d 1272 (11th Cir.1988); *Westray v. Porthole, Inc.,* 586 F. Supp. 834, 838-39 (D.Md.1984) (granting motion to dismiss); *Turner v. Unification Church,* 473 F. Supp. 367, 373-74 (D.R.I.1978) (granting motion to dismiss), *aff'd,* 602 F.2d 458 (1st Cir.1979).

Nor does 18 U.S.C. § 1584, a criminal statute, create or in any way imply a private right of action under the Thirteenth Amendment.  There is nothing on the face of § 1584 itself that would support the conclusion that Congress intended a private cause of action to exist for violations of that section.  Without any clear indication of legislative intent to create a private right of action, the judiciary is not to overstep its authority and impinge upon the lawmaking authority of Congress.  *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, --- U.S. ---, 128 S.Ct. 761, 772-773 (2008).  As the United States Supreme Court recently succinctly stated, "**The decision to extend the cause of action is for Congress, not for us**."  *Id*. at 773 (emphasis added).

Moreover, the fact that the statute is silent as to a private cause of action is an indication that Congress expressly intended that there **not** be such a private right, in light of the surrounding statutes and of Congress's history of enacting specific civil causes of action pursuant to the Thirteenth Amendment.  Congress has shown ample ability to specify private causes of action under the Thirteenth Amendment when it so desired.  *See, e.g.*  42 U.S.C. §§ 1981 1983, and 1985.  Further, Congress has recently specifically provided for a private cause of action only for certain statutes in Title 18, Part I, Chapter 77 of the U.S. Code (*i.e.*, the chapter from which Plaintiff draws her non-RICO causes of action):  18 U.S.C. sections 1589, 1590, and 1591.  *See*

18

18 U.S.C. § 1595.  **Section 1584 is conspicuously absent from the list of statutes for which a private cause of action was created**.  The fact that Congress has a long history of specifically enumerating causes of action under the Thirteenth Amendment, including within the very chapter of the U.S. Code from which Plaintiff draws her non-RICO causes of action, can lead only to the conclusion that Congress specifically intended that there not be a private cause of action for violations of 18 U.S.C. § 1584.[10]

For these reasons, Court IV of the Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

## VI.     COUNTS IV, V AND VI OF THE COMPLAINT FAIL TO STATE A CLAIM AGAINST THE CHILDREN DEFENDANTS UNDER *TWOMBLY*'S STANDARDS.

Aside from conclusory and non-specific statements, plaintiff offers little to no detail regarding the role taken by each individual Calimlim child in the wrongdoing alleged in Counts IV, V, or VI (the "non-racketeering" counts).  Plaintiff utilizes the mechanism of, first, lumping all of the Calimlim children together as the "Children Defendants," and then lumping the "Children Defendants" in with the "Parent Defendants."  However, when looking past this artful pleading, it is clear that plaintiff fails to state factual allegations against either Tina Calimlim or Jeff Calimlim showing "plausible grounds" on which to base her claims.  *See Twombly*, 127 S.Ct. at 1965.  As such, plaintiff's non-racketeering causes of action fail to state a claim upon which relief can be granted and should be dismissed.

---

[10] Plaintiff will no doubt cite the case of *Manliguez v. Joseph*, 226 F. Supp. 2d 377 (E.D.N.Y. Aug. 20, 2002), to try to convince the Court that it should overstep its judicial function and create an implied civil cause of action under 18 U.S.C. § 1584.  Not only is this case contrary to the overwhelming weight of authority holding that no private cause of action exists, it also was decided a year **before** Congress specifically chose not to include § 1584 in the list of statutes for which it was creating private causes of action in 18 U.S.C. § 1595.  *See* Pub. L. 108-193, § 4(a)(4)(A), 117 Stat. 2878 (Dec. 19, 2003).

19

Of the 153 paragraphs in plaintiff's Complaint, scant few actually specifically address any of the Calimlim children by name. There are numerous paragraphs that generically lump the Calimlim children together under the term "Co-conspirators" or the "Children Defendants," but make only conclusory and non-specific substantive allegations as to their role in the activity alleged in each paragraph. (*See, e.g.,* Complaint, ¶¶ 18, 19, 23, 35, 36, 39-61, 63-68, 70, 72, 73-75, 79, 80-81, 88, 91-92, 104, 132-134.) Of those substantive allegations that do mention any of the Calimlim children by name, none set forth sufficient facts that, if true, would actually prove any of the elements of the serious non-racketeering claims asserted by plaintiff in Counts IV, V and VI. (*See, e.g.*, Complaint, ¶¶ 10, 11, 12, 68(e), 71, 76-79, 100.) Indeed, the only specific allegation that any of these allegations state is that Tina, Jeff and/or Jack Calimlim may have from time to time made efforts to conceal the fact that the plaintiff was living with them. (*See, e.g.,* Complaint, ¶ 71.) However, "concealment," standing alone, is not an element of any of the non-racketeering causes of action. *See* 18 U.S.C. §§ 1584, 1589, 1590; *see also Pasamba v. HCCA International*, No. CV-08-0247-PHX-NVW, 2008 WL 2562928, at *6 (D. Ariz. June 24, 2008) (explaining required factual allegations necessary to state a claim for violation of 18 U.S.C. 1584, 1589, and 1590).

By lumping the Calimlim children and the Parent Defendants together in this fashion, plaintiff attempts to circumvent the requirement that she set forth some plausible ground for the relief she requests as to **each** defendant. *Twombly* requires something more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." 127 S.Ct. at 1964-65. Under those standards, Plaintiff's generic allegations are, at a minimum, insufficient to satisfy Rule 8 as to any of the Calimlim children, because they fail to give any one of them sufficient notice of the grounds on which the claims against him or her rest: "**By**

**lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy [Rule 8's] minimum standard**." *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (emphasis added); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (in action under 42 U.S.C. § 1983, plaintiffs' complaint "fails to isolate the allegedly unconstitutional acts of each defendant, and thereby does not provide adequate notice as to the nature of the claims against each"); *In re Elevator Antitrust Litig.*, No. 04-CV-1178 (TPG), 2006 WL 1470994, at *2-4 (S.D.N.Y. May 30, 2006) (dismissing complaint that failed to allege specific conduct against specific defendants); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (where allegations are made against multiple defendants, "plaintiffs must allege the basis of his claim against **each** defendant to satisfy [Rule] 8(a)(2)" (emphasis added)).

A determination that plaintiff's failure to separately state her allegations against each of the Calimlim children makes the Complaint deficient simply makes sense. It is illogical to think that all three Calimlim children are equally situated with respect to their individual interactions with the plaintiff over 19 years, and such differences in each of the Calimlim children's situation can be determinative of this action on any number of grounds, as discussed below. Further, at least for the purpose of the non-racketeering causes of action, the actions of one Calimlim child cannot be imputed to the others for purposes of liability. In a case such as this, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ." *Robbins*, 519 F.3d at 1250 (emphasis in original). Indeed, like the defendants in *Twombly*, any one of the Calimlim children "seeking to respond to plaintiff['s] conclusory allegations . . . would have little idea where to begin." *Twombly*, 127 S.Ct. at 1970-71 n.10. Because the

Complaint fails to provide notice to any of the individual Calimlim children of how his or her individual actions serve as grounds for the allegations of wrongdoing asserted against them, the non-racketeering counts of the Complaint should be dismissed.

## VII. ALTERNATIVELY, COUNTS IV, V, AND VI ARE SO VAGUE AND AMBIGUOUS THAT THE COURT SHOULD ORDER PLAINTIFF TO PROVIDE A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(e)

Because the Complaint is so vague and ambiguous, it forecloses any of the individual children of the reasonable ability to assert defenses based on their individual circumstances. As noted above, plaintiff utterly fails to make any allegations that would put any of the individual children on notice of what acts they individually are accused of doing, as minimally required under *Twombly* and Rule 8. Plaintiff's lack of specificity is unfair to defendants and a disservice to the Court—if left unremedied, it will force the Calimlim children to incur significant unnecessary expense simply to ferret out the factual underpinnings for claims against them and establish obvious defenses, such as their minor status during the majority of the relevant time period. To the extent that a reasonably pleaded complaint would afford the basis for preliminary motions that could at least narrow the scope of this lawsuit, plaintiff's Complaint as it now stands frustrates the Court's and the public's interest in the rapid disposition of pending litigation. As such, defendants Tina Calimlim and Jeff Calimlim ask the Court, alternatively, to order a more definite statement of the claims against them pursuant to Fed. R. Civ. P. 12(e).

Federal Rule of Civil Procedure 12(e) expressly authorizes a party to file a motion for more definite statement if a complaint is "so vague and ambiguous that the party cannot reasonably prepare a response." As this Court has stated, "Rule 12(e) is appropriately used to narrow issues, disclose the boundaries of claims, and expedite and simplify proceedings." *Bukovcan v. Ruh*, No. 06-CV0173, 2007 WL 26764, at *1 (E.D. Wis. Jan. 3, 2007) (Adelman, J.

presiding); *see also Sisk v. Texas Parks and Wildlife Dep't*, 644 F.2d 1056, 1059 (5th Cir. 1981) (Rule 12(e) authorizes a motion for more definite statement if the complaint "is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed"). A motion for more definite statement should be granted when the complaint fails to allege what an individual defendant "allegedly said or did or when, where, and under what circumstances he might have said or done something that makes him liable to [plaintiff]." *Parus v. Cator*, No. 05-C-0063-C, 2005 WL 1458770, at *3 (W.D. Wis. June 17, 2005).

In this case, there are several possible defenses available to the Children Defendants which turn on details not adequately expressed in the Complaint. These defenses would be available on a motion to dismiss under Rule 12 and, had the Complaint provided sufficient detail about the circumstances regarding the involvement of each of the Children Defendants in the alleged wrongdoing, would not need to wait resolution after expensive discovery and summary judgment proceedings. These potential defenses include:

- **Failure to State a Claim Upon Which Relief Can be Granted.** As the Complaint stands now, none of the Calimlim children know what they are alleged to have done on an individual basis that would satisfy any of the elements of the non-racketeering causes of action. Each instance in the Complaint where they are lumped in with each other and/or with their parents should be separately broken out, so that each child may evaluate whether or not his or her individual actions satisfy any of the elements of the non-racketeering causes of action.

- **Statute of Limitations**. The federal "catchall" statute of limitations for civil causes of action enacted after 1990 is four years after the cause of action accrues.

23

*See* 28 U.S.C. 1658.[11]  Plaintiff filed this lawsuit on September 25, 2008—three

years and 361 days after allegedly having been taken out of the Calimlim home on

September 29, 2004.  Of the three Calimlim children, only Jeff Calimlim is

alleged to have been in the home at the time.  Even then, there is no individual

allegation that he committed any act in the four-day window that would satisfy

any of the elements of the non-racketeering causes of action, such that the statute

of limitations had not already run.  As for Tina Calimlim, she is only alleged to

have been intermittently in the home since the late 1990's, and she is not

individually alleged to have committed any acts during the limitations period that

would support a finding of wrongdoing under the non-racketeering causes of

action.  Nor is there any allegation whatsoever regarding when the non-

racketeering causes of action accrued.  In order to properly frame this defense, the

Calimlim children need to evaluate factual allegations notifying each of what each

allegedly did that would satisfy any of the elements of the non-racketeering

causes of action, when those actions occurred, and when plaintiff knew or should

have known of her injury.  As the Complaint is currently drafted, none of the

Calimlim children can discern that information.

- **Retroactivity of Effect of 18 U.S.C. § 1595**.  The default rule is that statutes
  creating new causes of action are not applied retroactively.  *See Mojica v. Cannett
  Co.*, 7 F.3d 552, 557 (7th Cir. 1993) (holding that the "weight of history and
  tradition, as well as considerations of fairness, compel us to observe a

---

[11] This statute of limitations would not apply to Count IV, based on 18 U.S.C. § 1584, which was enacted in 1948. Instead, the most closely analogous state statute of limitations would apply.  *See Sentry Corp. v. Harris*, 802 F.2d 229, 232 (7th Cir. 1986).  However, the question of which statute of limitations would apply to this count is largely academic, because neither 18 U.S.C. § 1584 or the Thirteenth Amendment supplies either an express or implied civil cause of action, as explained above.

presumption against the retroactive application of newly-enacted statutes.") The statute creating the causes of action for Counts V and VI came into effect on December 19, 2003. *See* 18 U.S.C. § 1595; *enacted at* Pub. L. 108-193, § 4(a)(4)(A), 117 Stat. 2878 (Dec. 19, 2003). In order to properly frame this defense, each of the Children Defendants need to evaluate factual allegations notifying each of what each allegedly did that would satisfy any of the elements of the non-racketeering causes of action, and whether plaintiff is asserting that those actions occurred after the statute was passed in December, 2003. Each of the Children Defendants also need to know whether plaintiff is asserting that liability arises from any actions they may have taken before the enactment of the statute, as well as after.

- **Minor Status.** Aside from making broad, conclusory allegations, the Complaint fails to make it clear when the alleged acts by each of the Children Defendants that would satisfy any of the elements of the non-racketeering causes of action took place. The Children Defendants were, for the majority of the relevant time period, minors. If all of the alleged acts by the Children Defendants occurred while they were minors, that fact would provide a potential defense. As the Complaint stands, however, the Children Defendants have no way of framing that defense.

One or more of these defenses would be dispositive of some or all of the non-racketeering causes of action, and it would be inequitable to force defendants to undergo a burdensome and unnecessary discovery and summary judgment process, just to reach these issues much further down the road. However, plaintiff's failure to meet the minimal requirements of pleading under

25

*Twombly* forecloses the Children Defendants of the opportunity to assert any of these defenses at this time. Plaintiff should not be rewarded for her strategy of lumping the Children Defendants together, and should be required to submit a more definite statement that complies with current federal pleading requirements, making it reasonably possible for each of the Children Defendants to frame and present their defenses.

## CONCLUSION

For these reasons, defendants Christina Calimlim and Jefferson M. Calimlim ask the Court to dismiss the Complaint in its entirety. In the alternative, defendants ask the Court to grant their motion for a more definite statement as requested.

Dated: Dec. 17, 2008

_____/s/ Robert L. Gegios_____
Robert L. Gegios
William E. Fischer
Kohner, Mann & Kailas, S.C.
Washington Building 2nd Fl
4650 N. Port Washington
Milwaukee, WI 53212-1077
Phone: 414-962-5110
Fax: 414-962-8725
rgegios@kmksc.com
wfischer@kmksc.com
*Counsel for Defendants Jefferson M. Calimlim and Christina Calimlim*

26