**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| IRMA MARTINEZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:08-CV-00810 |
| | ) | |
| JEFFERSON N. CALIMLIM, ELNORA | ) | Judge Lynn Adelman |
| M. CALIMLIM, JEFFERSON M. | ) | |
| CALIMLIM, CHRISTOPHER JACK | ) | |
| CALIMLIM, CHRISTINA CALIMLIM | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO JEFFERSON M. CALIMLIM,
CHRISTOPHER JACK CALIMLIM, AND CHRISTINA CALIMLIM'S MOTIONS TO
DISMISS THE COMPLAINT AND ALTERNATIVE MOTIONS FOR A MORE
DEFINITE STATEMENT**

---

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663 (7th Cir. 2007) ...........7, 29

*American Manufactures Mutual Insurance Co. v. Townson*, 912 F. Supp. 291 (E.D. Tenn. 1995) ................................................................................................................................8

*Ash v. Wallenmeyer*, 879 F.2d 272 (7th Cir. 1989)..............................................................18

*Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1989) .............................................13

*Bachman v. Bear, Stearns & Co.*, 178 F.3d 930 (7th Cir. 1999) ......................................10

*Bankcard America Inc. v. Universal Bancard System Inc.*, 904 F. Supp. 753 (N.D. Ill. 1995) ..............................................................................................................................12

*Bankers Trust Co. v. Old Republic Insurance Co.*, 959 F.2d 677 (7th Cir. 1992)........................17

*Bayh v. Sonnenburg*, 573 N.E.2d 398 (Ind. 1991).........................................................28

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................................7

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) ..............................20-22

*Budgetel Inns v. Micros Systems*, No. 97-CV-301, 2002 WL 3223532 (E.D. Wis. Jan. 30, 2002) ................................................................................................................................9

*Bukovcan v. Ruh*, No. 06-CV-0173, 2007 WL 26764 (E.D. Wis. Jan. 3, 2007) ...........................30

*Burdett v. Miller*, 957 F.2d 1375 (7th Cir. 1992)......................................................8, 9

*Carpenter v. United States*, 484 U.S. 19 (1987) ...........................................................14

*Civil Rights Cases*, 109 U.S. 3 (1883) .......................................................................27

*Corley v. Rosewood Care Center*, 142 F.3d 1041 (7th Cir. 1998) .........................................17, 18

*In re Crazy Eddie Security Litigation*, 812 F. Supp. 338 (E.D.N.Y. 1993)..................................8

*Doe v. Smith*, 429 F.3d 706 (7th Cir. 2005) ................................................................29

*Dolla v. Unicast Co.*, 930 F. Supp. 202 (E.D. Pa. 1996) .................................................28

*EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007) ...................................29

*Emery v. American General Financial, Inc.*, 134 F.3d 1321 (7th Cir. 1998).........................16, 17

i

*Erickson v. Pardus*, 127 S. Ct. 2197 (2007) .................................................................6

*Gagan v. American Cablevision, Inc.*, 77 F.3d 951 (7th Cir. 1996) ...............................12

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989).......................11, 13

*Hinsdale Women's Clinic, S.C. v. Women's Health Care of Hinsdale*, 690 F. Supp. 658
    (N.D. Ill. 1988)........................................................................................................12, 18

*Humphreys v. Nager*, 962 F. Supp. 347 (E.D.N.Y. 1997) .............................................28

*Jane Doe I v. Reddy*, No. 02-05570, 2003 WL 23893010 (N.D. Cal. Aug. 4, 2003) .....................8

*Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466 (7th Cir. 2007).........................13

*Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321 (7th Cir. 1994)........................................18

*Kunik v. Racine County*, 946 F.2d 1574 (7th Cir. 1991) ...............................................24

*Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797 (7th Cir. 2008) .....................7

*Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987)....................................11, 12

*Manliguez v. Joseph*, 226 F. Supp. 2d 377 (E.D.N.Y. 2002).........................................28

*MCM Partners v. Andrews-Bartlett & Assocs.*, 62 F.3d 967 (7th Cir. 1995)...............25

*Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986).......................................11

*Moore v. Fidelity Financial Services, Inc.*, 869 F. Supp. 557 (N.D. Ill. 1994) ............30

*Olympic Federal v. Remp*, No. 87C8705, 1998 WL 64410 (N.D. Ill. June 16, 1998) .................16

*Pereira v. United States*, 347 U.S. 1 (1954) ................................................................15

*Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114 (D.C. Cir. 1991) ..........13

*Reves v. Ernst & Young,* 507 U.S. 170 (1993)...............................................................25

*Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640 (7th Cir. 1995)..............................7

*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989) ................................................................20

*Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857 (7th Cir. 1999).................23, 24

*RxUSA, Inc. v. Capital Returns Inc.*, No. 06-C-00790, 2007 WL 2712958 (E.D. Wis.
    Sept. 14, 2007) ......................................................................................................12, 13

*Schmuck v. United States*, 489 U.S. 705 (1989) ..........................................................15

*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 2431 (2008) ........................................................................................6

*State v. Judd*, 147 Wis. 2d 398, 433 N.W. 2d 260 (Ct. App. 1988)...............................25

*State v. O'Connell*, 179 Wis. 2d 598, 508 N.W.2d 23 (Ct. App. 1993) ...................26, 27

*Terry Properties, Inc. v. Standard Oil Co.*, 799 F.2d 1523 (11th Cir. 1986) ...............28

*Tucker v. Kingston*, 538 F.3d 732 (7th Cir. 2008) ........................................................14

*Tison v. Arizona*, 481 U.S. 137 (1987) .........................................................................23

*Uni\*quality, Inc. v. Infotronix, Inc.*, 974 F.2d 918 (7th Cir. 1992) ...............................18

*Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516 (7th Cir. 1995).............11, 12

*United States v. Balogun*, 971 F. Supp. 1215 (N.D. Ill. 1997) ......................................24

*United States v. Bello-Perez*, 977 F.2d 664 (1st Cir. 1992).........................................22

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in East Africa*, 549 F.3d 146 (2d Cir. 2008)........23, 24

*United States v. Britton*, 289 F.3d 976 (7th Cir. 2002) ................................................14

*United States v. Brocksmith*, 991 F.2d 1363 (7th Cir. 1993).......................................15

*United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008), *.cert. denied*, __ S. Ct. __, No. 08-634, 2009 WL 56256 (U.S. Jan. 12, 2009) ............................................................5

*United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005) .........................19

*United States v. Doerr*, 886 F.2d 944 (7th Cir. 1989) ...................................................8

*United States v. Ferguson*, 758 F.2d 843 (2d Cir. 1985) ...............................................8

*United States v. Flynn*, 852 F.2d 1045 (8th Cir. 1988).................................................10

*United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006) ......................................................8

*United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003).............14

*United States v. Hargrove*, 508 F.3d 445 (7th Cir. 2007).............................................24

*United States v. Jebara*, 313 F. Supp. 2d 912 (E.D. Wis. 2004) ..................................23

*United States v. Koenig*, 856 F.2d 843 (7th Cir. 1988).................................................24

*accord United States v. Kozminski,* 487 U.S. 931 (1988)............................................................27

*United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006), *cert. denied*, 128 S. Ct. 46 (2007)............14

*United States v. Maddox*, 944 F.2d 1223 (6th Cir. 1991))............................................................23

*United States v. Matera*, 489 F.3d 115 (2d Cir.), *cert. denied*, 128 S. Ct. 424 (2007) ..................8

*United States v. Mitra*, 405 F.3d 492 (7th. Cir. 2005) ................................................................16

*United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir. 1986) ..................................................21

*United States v. Nesbitt*, 852 F.2d 1502 (7th Cir. 1988)..............................................................24

*United States v. Persico*, 832 F.2d 705 (2d Cir. 1987) ..................................................................8

*United States v. Ratliff-White*, 493 F.3d 812 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1070
    (2008)...........................................................................................................................15

*United States v. Shorter*, 54 F.3d 1248 (7th Cir. 1995) ..............................................................22

*United States v. Stephens*, 46 F.3d 587 (7th Cir. 1995) ..........................................................20, 21

*United States v. Townsend*, 924 F.2d 1385 (7th Cir. 1991)..........................................................21

*United States v. Turkette*, 452 U.S. 576 (1981) .......................................................................7, 8

*United States v. Turner*, 2008 WL 5396836 (7th Cir. Dec. 30, 2008)...........................................17

*United States v. Useni*, 516 F.3d 634 (7th Cir. 2008)..................................................................20

*United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993).............................................................15

*United States v. Welch*, 15 F.3d 1202 (1st Cir. 1993).................................................................23

*United States v. Wilson*, 493 F. Supp. 2d 364 (E.D.N.Y. 2006) ..................................................24

*United States v. Wong*, 40 F.3d 1347 (2d Cir. 1994)................................................................9, 23

*Vincent v. City Colleges of Chicago*, 485 F.3d 919 (7th Cir. 2007) ........................................29, 30

*Weidenfeller v. Kidulis*, 380 F. Supp. 445 (E.D. Wis. 1974)...................................................27, 28

**STATUTES AND CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIII, § 1............................................................................................27

U.S. Const. amend. XIII, § 2............................................................................................27

8 U.S.C. § 1324........................................................................................................5, 19

18 U.S.C. § 371 .................................................................................................5

18 U.S.C. § 1584 ..........................................................................................27, 28

18 U.S.C. § 1589 .................................................................................................5

18 U.S.C. § 1594 .................................................................................................5

18 U.S.C. § 1595 ...............................................................................................28

18 U.S.C. § 1961 ...............................................................................................26

18 U.S.C. § 1961(4) .............................................................................................8

18 U.S.C. § 1961(5) ...........................................................................................11

18 U.S.C. § 1962(c) ...........................................................................................25

18 U.S.C. § 1962(d) ...............................................................................19, 20, 24

*Organized Crime Control Act of 1970*, Pub. L. No. 91-452, § 901(a), 84 Stat. 941 (1970).........26

*William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008*, Pub. L.
    No. 110-457, § 221, 122 Stat. 5044, 5067 (2008) ....................................................28

Wis. Stat. § 940.30 ...........................................................................................26

Wis. Stat. § 940.31 ...........................................................................................26

Wis. Stat. § 940.302 .........................................................................................26

Wis. Stat. § 943.30 ...........................................................................................26

Wis. Stat. § 946.83(3) .......................................................................................25

Wis. Stat. 946.83(3) ..........................................................................................25

Wis. Stat. § 946.82(2) .......................................................................................26

Wis. Stat. § 946.82(4) .......................................................................................26

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ........................................................................................6, 19, 29

Fed. R. Civ. P. 12(b)(6) ................................................................................2, 6, 30

Fed. R. Civ. P. 12(e) .......................................................................................29-30

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

ARGUMENT.......................................................................................................6

I.      LEGAL STANDARD.................................................................................6

II.     MS. MARTINEZ HAS ALLEGED COGNIZABLE CIVIL RICO CLAIMS..........7

       A.      Ms. Martinez Sufficiently Alleges a RICO "Enterprise."............................7

       B.      Ms. Martinez Successfully Alleges a Pattern of Racketeering Activity. ......11

       C.      Ms. Martinez's Complaint Alleges Predicate Acts of Wire  Fraud and Mail Fraud With Sufficient Particularity. .....................................................14

       D.      Ms. Martinez Has Adequately Pled a Host of Additional Predicate Acts. ...18

III.    MS. MARTINEZ HAS ALLEGED A COGNIZABLE RICO CONSPIRACY .......19

IV.    MS. MARTINEZ HAS SATISFIED THE PLEADING REQUIREMENTS OF WOCCA...................................................................................................25

V.     MS. MARTINEZ STATES A VIABLE CLAIM FOR RELIEF UNDER THE THIRTEENTH AMENDMENT AND UNDER 18 U.S.C. § 1584. ........................27

VI.    EACH OF MS. MARTINEZ'S CLAIMS IS SPECIFIC AND EASILY PERMITS THE CHILDREN DEFENDANTS TO RESPOND...............................28

Plaintiff Irma Martinez ("Ms. Martinez"), by her attorneys, hereby responds to Defendants Christina Calimlim ("Christina"), Jefferson M. Calimlim ("Jefferson Jr."), and Christopher Jack Calimlim's ("Jack") (collectively, the "Children Defendants") Motions to Dismiss the Complaint and Alternative Motions for a More Definite Statement. For the reasons set forth below, the Children Defendants' motions should be denied in their entirety.[1]

## **INTRODUCTION**

In 1985, Jefferson N. Calimlim and Elnora Calimlim ("Jefferson Sr.," "Elnora," and collectively, the "Parent Defendants"), and Elnora's parents, Dr. Jovito Mendoza and Mrs. Bending Mendoza (the "Mendozas"), trafficked Irma Martinez into the United States for forced labor. The Calimlim Family held Ms. Martinez in involuntary servitude for nineteen years, forcing her to work long hours as a domestic servant and subjecting her to threats of serious harm and physical restraint. On September 25, 2008, Ms. Martinez filed the instant Complaint seeking damages for the injuries she suffered as a trafficking victim imprisoned in the Calimlim Family's $1.2 million Brookfield mansion. Ms. Martinez brings this civil Racketeer Influenced and Corrupt Organizations Act ("RICO") action against both the Children Defendants and the Parent Defendants, asserting a RICO conspiracy claim against all three of the Children Defendants. As the facts pled in the Complaint amply demonstrate, the Children Defendants supported, facilitated, and participated in the Calimlim Family's "Human Trafficking and Alien Harboring Enterprise" (the "Calimlim Family Enterprise"). Their affirmative acts played an essential role in the operation of the enterprise. Indeed, without the Children Defendants' own

---

[1] Christina and Jefferson Jr. together filed one motion to dismiss, while Jack separately filed a nearly identical motion and brief. By this opposition, Ms. Martinez responds to both motions. Because the Children and Parent Defendants make similar arguments in seeking dismissal, this Opposition overlaps with the Opposition previously filed to the Parent Defendants' Motion to Dismiss. However, the Children Defendants also make a number of distinct arguments, which Ms. Martinez separately addresses here. Citations to the Children Defendants' Motion to Dismiss (Defs.' Mot.) are to the brief filed by Christina and Jefferson Jr.

efforts to conceal, isolate, and exploit Ms. Martinez, and facilitation of the Parent Defendants' similar acts, the enterprise could not have functioned. Despite their protests to the contrary, the Children Defendants were active participants and conspirators, not mere innocent bystanders.

The Children Defendants have moved to dismiss Counts II through VI of the Complaint under Rule 12(b)(6). In the alternative, they seek a more definite statement. The Children Defendants assert that the Complaint must be dismissed: (1) because Ms. Martinez has not adequately pled RICO's elements; (2) because Ms. Martinez has failed to allege a cognizable conspiracy to violate the RICO statute; (3) because Ms. Martinez has not pled a violation of the Wisconsin Organized Crime Control Act; (4) because neither the Thirteenth Amendment nor 18 U.S.C. § 1584 give rise to a private right of action; and (5) because neither the racketeering counts (Counts II and III) nor the claims for involuntary servitude, trafficking, and forced labor (Counts IV-VI) are sufficiently factually detailed. As explained below, each of these arguments fails. The Children Defendants' motions should be denied.

## BACKGROUND

On September 29, 2004, federal agents raided the Calimlim family home in response to a tip that an undocumented alien was being held there. (Compl. ¶ 98.) When the FBI agents arrived, Jefferson Jr., then living in the home, lied and told them that he did not know where Ms. Martinez was and had not seen her in a year. (Compl. ¶ 100.) Moments later, the agents found Ms. Martinez hiding in a closet in the basement, terrified that the arrest, detention, and deportation that the defendants had long threatened had at last come to pass. (Compl. ¶¶ 101, 128.c, 145.)

At the time of the raid, Ms. Martinez had been living in captivity for nineteen years. Although Christina, Jack, and Jefferson were children when Ms. Martinez was first trafficked into their home, (they were, respectively, 5, 8, and 11 years old), they had become adults long

before she was freed.  When the Calimlim home was raided, Christina was twenty-four years old.

Jack was twenty-eight.  Jefferson Jr. was thirty.  Over those nineteen years, all three Children

Defendants had lived full-time with Ms. Martinez until departing for college.  Jack and Christina

returned home for vacations and visits as adults, and Jefferson Jr. actually lived in the Calimlim

family home permanently before the government raid. (Compl. ¶¶ 10-12.)

The Children Defendants knew that the Family was harboring an undocumented alien in

their home.  Soon after Ms. Martinez was trafficked into the United States, she overheard Elnora

explain to Christina that Martinez was in the country illegally. (Compl. ¶ 36.c.)  Ms. Martinez

herself had regular discussions with Jack and Christina throughout her captivity about her

homesickness and desire to return to the Philippines.  In response, Jack and Christina served as

their parents' enforcers, telling Ms. Martinez that her immigration status left her powerless to

leave the United States. (Compl. ¶ 79.)

The Children Defendants went to great lengths to isolate, conceal, and confine Ms.

Martinez.  They succeeded so completely that none of their friends or neighbors knew of Ms.

Martinez's existence. (Compl. ¶ 58.)   Until the day that Ms. Martinez was freed, the Children

Defendants obeyed the family rule that they were not to discuss Ms. Martinez with anyone

outside of their family. (Compl. ¶ 60.)   Additionally, each of the Children Defendants used the

family's elaborate telephone signaling system to ensure that Ms. Martinez was available to field

Defendants' calls without the risk of being discovered by outsiders.  The Children Defendants

used this system to order Ms. Martinez to hide before bringing friends to the house.  (Compl. ¶

73.)  When the Children Defendants drove Ms. Martinez on errands, they forced her to hide in

the back seat of the car. (Compl. ¶ 71.)  The Children Defendants knowingly took these steps to

conceal Martinez's very existence, allowing them to continue harboring her for the purpose of

exploiting her labor. (Compl. ¶ 74.)  Indeed, all three of the Children Defendants took active and

knowing steps to keep Ms. Martinez's bondage secret and to shield her from detection.  For

example, Jack lied to Sherry Bantug, the woman who ultimately became his wife, trying to pass

Ms. Martinez off as a relative from Chicago. (Compl. ¶¶  76, 77.)  Christina ordered Martinez to

hide in her basement room and not come out whenever Christina planned to bring friends to the

house.  (Compl. ¶ 78.)

On the rare occasions when Ms. Martinez was allowed to leave the home, she was always

escorted.  When, for example, Ms. Martinez needed to purchase personal supplies, Elnora or one

of the Children Defendants would escort her to a store, and require that she leave any items close

to the cashier.  One of the defendants would then enter the store, find the items, and purchase

them. (Compl. ¶¶ 80-81.)

The Children Defendants continued to force Ms. Martinez to act as their servant well into

their adulthood. (Compl ¶¶ 36, 54, 55.)  When they returned home as adults, the Children

Defendants expected Ms. Martinez to act as their servant, doing their laundry, cleaning their

bedrooms and bathrooms, preparing their meals, and washing their dishes.  (Compl. ¶¶ 54-56.)

As they grew up, the Children Defendants took no action to withdraw from the forced

labor and alien harboring conspiracy.  They took no affirmative steps to disavow or defeat the

conspiracy's purpose — namely the exploitation of Ms. Martinez's labor.  And each of them, as

adults, continued to conceal Ms. Martinez and exploit her forced labor.  Their continued and

active support for the conspiracy stands in sharp contrast to the actions taken by Sherry Bantug,

Jack's ex-wife.  After finding out that Ms. Martinez was not, in fact, a Calimlim family relative

but was actually being held as a virtual slave, Bantug divorced Jack and blew the whistle.  By

reporting the family to federal authorities, she set in motion the FBI raid that rescued Ms.

Martinez.   Federal agents arrested the Parent Defendants and Jefferson Jr., charging them with

harboring an undocumented alien for private financial gain.[2]  The Parent Defendants were also

charged with conspiracy to commit forced labor,[3] forced labor,[4] and attempted forced labor.[5]

Jefferson Jr. and the Parent Defendants were convicted of each of these charges.[6]

The Children Defendants argue both that (1) Ms. Martinez's claims are merely an

improper attempt to "convert the criminal convictions of the [ ] Parent Defendants into a basis

for serious civil claims against" them; and (2) Ms. Martinez's claims do not satisfy the requisite

pleading standards. (Defs.' Mot. 2)  The Children Defendants are wrong on both counts.

As a preliminary matter, the Children Defendants all but ignore  Jefferson Jr.'s

*conviction* for alien harboring, one of the underlying predicate acts.  (Comp. ¶ 2.)  The facts

alleged in the Complaint show that Christina and Jack also violated  8 U.S.C. § 1324.  That  the

federal government elected not to prosecute  — perhaps as a method of forcing Christina to

testify against her parents at trial — is immaterial.  This is not a case of innocents swept into a

conspiracy because of mere association with criminals.  Each of the children was well-aware of

the nature of their family's criminal enterprise.

Ms. Martinez's allegations more than adequately satisfy the pleadings requirements.  The

Complaint refers to the "Children Defendants" and "Defendants and Co-Conspirators" precisely

because *each* of the children individually committed the acts described in the Complaint.  All

three of the Children Defendants repeatedly and knowingly performed acts that facilitated the

---

[2] 8 U.S.C. § 1324 (harboring an undocumented alien)
[3] 18 U.S.C. § 371 (conspiracy to commit forced labor)
[4] 18 U.S.C. § 1589 (forced labor)
[5] 18 U.S.C. § 1594 (attempted forced labor)
[6] The Seventh Circuit upheld the Parent Defendants' convictions on August 15, 2008, remanding the case back to the trial court for additional sentencing enhancements.  *United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008), *cert. denied*, __ S. Ct. __, No. 08-634, 2009 WL 56256 (U.S. Jan. 12, 2009). The Parent Defendants are currently incarcerated, each serving a four year prison term in federal prison. Jefferson Jr. was sentenced to 120 days of home confinement, three years of supervised release, and a $5,000 fine.

enterprise, including transporting Ms. Martinez by car and concealing her presence in the Calimlim home. Ms. Martinez's allegations as to how they facilitated the enterprise are quite specific: The Children Defendants required that she hide from any guests invited into the house. (Compl. ¶ 78). The Children Defendants demanded that she hide while they transported her in cars. (Compl. ¶ 81). The Children Defendants kept Ms. Martinez under watchful eye on the few occasions that she was let out of the house, all the while making sure that they would not be seen with her. They allowed her only to answer the main phone when a code was used. (Compl. ¶ 73).

And not only did the Children Defendants do nothing to help Ms. Martinez in the face of her repeated statements that she wanted to go home to the Philippines, Jack and Christina exploited her immigration status and vulnerability, telling her that she could not leave the country. (Compl. ¶ 79). When confronted about Ms. Martinez, both Jack and Jefferson Jr. lied in an attempt to protect the Calimlim Family's criminal enterprise. (Compl. ¶¶ 76, 77, 100). As minors and then as adults, they actively participated in the conspiracy and personally committed predicate acts. And through their efforts to conceal and isolate Ms. Martinez, they made it possible for their family — operating as a criminal enterprise — to secure Ms. Martinez's involuntary labor for nearly two decades.

## ARGUMENT

### I.     LEGAL STANDARD

When ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam). All inferences must be drawn in favor of the non-movant. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 2431 (2008). Plaintiff's claims need only "have

some degree of plausibility to survive dismissal." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). A complaint should only be dismissed when "the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).[7]

## II.     MS. MARTINEZ HAS ALLEGED COGNIZABLE CIVIL RICO CLAIMS

Count I of the Complaint, which alleges the conduct of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), is asserted only against the Parent Defendants. Nonetheless, in an attempt to evade liability under Count II for their participation in the RICO conspiracy under 18 U.S.C. § 1962(d), the Children Defendants argue that (1) the Calimlim Family is not a RICO enterprise, (2) the Complaint does not allege a pattern of racketeering activity, and (3) Ms. Martinez has not pled the predicate acts of fraud with sufficient particularity.

### A.     <u>Ms. Martinez Sufficiently Alleges a RICO "Enterprise."</u>

A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (noting that an enterprise is "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making"). Association-in-fact

---

[7] Defendants' assertion that this case is likely to "spawn sprawling, costly, and hugely time-consuming discovery" is simply not true. Discovery is, with a few exceptions, substantially complete. Jefferson Jr. and the Parent Defendants' criminal trials — for alien harboring as to all three defendants and for several forced labor violations as to the Parent Defendants — did not merely adjudicate their guilt for the crimes alleged in Ms. Martinez's complaint; they developed a rich evidentiary record that Ms. Martinez should be "entitled to offer . . . to support [her civil] claims." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1981 (2007) (quotation marks omitted).

enterprises must have "some structure, to distinguish an enterprise from a mere conspiracy, but there need not be much." *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992).

The Supreme Court has described three sub-elements that must be proven to prevail on the enterprise prong of a RICO action. *United States v. Turkette*, 452 U.S. at 583. First, the enterprise must be an ongoing organization with a decision-making structure. Second, the associates must function as a continuing unit. Finally, the enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Id.* The Calimlim three-generational family, The Calimlim Family Enterprise, fully satisfies each of these criteria.

*First*, the Children Defendants' cursory argument that a three-generation family, and "especially one involving minor children," cannot be an association-in-fact RICO enterprise is simply wrong. (Defs.' Mot. 8.) Not only is RICO an area of law replete with criminal enterprises run by families,[8] the Children Defendants can certainly be held to account for the fact that, as minors and adults, they participated consciously in the enterprise. The Seventh Circuit has recognized that defendants should not receive favorable treatment simply because they were minors when the conspiracy began. *See United States v. Doeer*, 886 F.2d 944, 969 (7th Cir. 1989) (recognizing that "conspiracy is a continuing crime" and that "once it is established that certain acts of the charged offense occurred after the defendant's eighteenth birthday, it is

---

[8] *See, e.g.*, *In re Crazy Eddie Sec. Litig.*, 812 F. Supp. 338, 354 (E.D.N.Y. 1993) (holding that an association-in-fact enterprise consisting of members of the Antwar family constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4)); *Jane Doe I v. Reddy*, No. 02-05570, 2003 WL 23893010 (N.D. Cal. Aug. 4, 2003) (finding that a family and its businesses constituted an enterprise engaged in trafficking for forced labor); *Am. Mfrs. Mut. Ins. Co. v. Townson*, 912 F. Supp. 291, 295 (E.D. Tenn. 1995) ("[M]arriage can be an 'enterprise' under RICO. In a marriage, a man and a woman are associated together for the common purpose of engaging in a course of conduct necessary to preserve their welfare as a marital unit."). Of course, in the quintessential RICO case — a business captured by the Mafia — the Mafia members running the "family" establish procedures that family members — both related and recruited — follow. Indeed, the major RICO cases have involved "families," featuring close relatives as individual defendants. *United States. v. Persico*, 832 F.2d 705 (2d Cir. 1987) (describing father-son enterprise); *United States v. Matera*, 489 F.3d 115 (2d Cir. 2007) ("crime family case"); *United States. v. Gotti*, 459 F.3d 296 (2d Cir. 2006) (same), *cert. denied*, 127 S.Ct. 3001 (2007); *United States. v. Ferguson*, 758 F.2d 843 (2d Cir. 1985) (enterprise called "The Family").

appropriate for the entire case to be tried in adult court, in accordance with the adult rules of procedure and evidence").  Likewise, both substantive RICO and RICO conspiracy offenses are continuing crimes.  As a result, an adult defendant may properly be held liable under RICO for predicate offenses committed as a juvenile.  *See United States v. Wong*, 40 F.3d 1347, 1368 (2d Cir. 1994) (recognizing that defendant's age at the time the RICO enterprise *ends* is the relevant age for purposes of the Act).

The association-in-fact enterprise described in the Complaint, an otherwise normal-looking family, is an ongoing organization with a long-standing decision-making structure.  The Calimlim Family Enterprise was "'not an ad hoc affair but persisted as an identifiable entity through time-and by the differentiation of roles within it.'" *Budgetel Inns v. Micros Systems*, No. 97-CV-301, 2002 WL 3223532 at *2 (E.D. Wis. Jan. 30, 2002) (quoting *Burdett*, 957 F.2d at 1379).  The patriarch of the family, Jefferson Sr., in concert with his wife Elnora, made the decisions for the family enterprise and supervised implementation.  Jefferson Sr. enforced his will on the entire family with physical violence and a terrifying temper. (Compl. ¶¶ 40, 84-86, 110, 112.)  Each member of the Calimlim extended family, including the grandparents in the Philippines, played a role in this structure, engaging in a secretive pattern of racketeering activity designed to lock in Ms. Martinez's involuntary labor.  Each member of the enterprise took elaborate measures to conceal her presence, and each member performed specific roles. (Compl. ¶¶ 26 -31, 35, 70-81.)

In the Philippines, Elnora's parents, the Mendozas, followed Jefferson Sr. and Elnora's instructions to procure a fraudulent visa and facilitate Ms. Martinez's travel to the United States.  Elnora's parents served as the traffickers.  In the United States, the Parent Defendants  — particularly Jefferson Sr.  — developed the rules by which the enterprise operated.  The Children

Defendants abided by those rules well into adulthood and took affirmative steps to ensure that the enterprise met its core goal and common purpose: permanently securing Ms. Martinez's involuntary labor. The Parent and Children Defendants jointly enjoyed the fruits of the enterprise: free labor.

*Second*, the Calimlim Family Enterprise functioned as a continuing unit. The Parent Defendants ran their family, including their children and Elnora's parents, as a criminal enterprise. The Calimlim family lived together, traveled together, and kept in close contact with one another, including with the Mendoza grandparents in the Philippines. (Compl. ¶ 112.) Those same contacts over a nineteen-year period facilitated the transfer of Ms. Martinez's fraudulent "wages" to her impoverished family in the Philippines. (Compl. ¶ 112.)

*Third*, the Calimlim family has an "ascertainable structure distinct from that inherent in the conduct of this pattern of racketeering activity," that is, the pattern of mail and wire fraud, trafficking, alien harboring, and forced labor offenses. *United States v. Flynn*, 852 F.2d 1045, 1051 (8th Cir. 1988) (internal citation and quotation marks omitted). "This structure is found in the family and social relationships between the members of the group." *Id*. The Children Defendants' attack on the nomenclature used in the Complaint — the Human Trafficking and Alien Harboring Enterprise — is absurd and self-defeating. Defendants cannot logically argue that a three generation family cannot be a RICO enterprise *because it is a family* only to go on to argue that the name assigned to the enterprise somehow shows that the enterprise was "nothing more than a combination of the alleged predicate acts." (Defs.' Mot 8.) While the racketeering activity ended with the arrests of Jefferson Sr., Elnora, and Jefferson Jr., the Calimlim Family lives on. This durability shows that the enterprise is not reducible to its crimes. *See Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) ("Duration helps to indicate existence of

an enterprise, although the duration must be a function not of the nature of the fraud or other racketeering activity itself, but rather of there being an organization able to hold itself together through time.").

### B. Ms. Martinez Successfully Alleges a Pattern of Racketeering Activity.

The Children Defendants contend that Ms. Martinez fails to allege a pattern of racketeering activity. (Defs.' Mot. 9.) A "pattern of racketeering activity," is defined as the commission of at least two predicate acts within a ten-year time period. 18 U.S.C. § 1961(5). The Supreme Court has required "continuity plus relationship" among the various acts of racketeering activity to constitute a pattern. *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989) (quotation marks omitted).

The Children Defendants do not even address whether the predicate acts alleged are related. They are. The Children Defendants do, however, dispute that Ms. Martinez's Complaint satisfies the continuity prong. Their argument — that Ms. Martinez is "a single victim," with "a distinct injury from one extended episode" (Defs.' Mot. 10.) — fails.

*First*, that the Calimlim Family Enterprise trafficked only one victim into the United States for forced labor is hardly fatal to Ms. Martinez's RICO claims. *See Morgan v. Bank of Waukegan*, 804 F.2d 970, 975-76 (7th Cir. 1986). ("[T]he mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement."). Multiple cases in this Circuit have found a pattern of racketeering activity in instances involving one victim and a single scheme. *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1305 (7th Cir. 1987) ("[T]he repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering activity for purposes of civil RICO."); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 523 (7th Cir. 1995) ("the existence of a single victim does not preclude the existence of a pattern

of racketeering activity"); *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 963 (7th Cir. 1996) ("[T]he various predicates of mail and wire fraud occurred repeatedly over a period as long as three years and each scheme, though inflicted upon the same victim, caused separate and distinct injuries"); *Hinsdale Women's Clinic, S.C. v. Women's Health Care of Hinsdale*, 690 F. Supp. 658 (N.D. Ill. 1988) (single victim and single scheme sufficient to prove pattern of racketeering activity).[9]

Like the single victims in *Hinsdale*, *Uniroyal*, and *Liquid Air*, Ms. Martinez has suffered significant and separate injuries caused by the wide variety of predicate acts and crimes committed by the Calimlim Family Enterprise and the individual defendants. Ms. Martinez suffered a separate cognizable injury each time the defendants defrauded her of her salary using the mail or the wires; each time the defendants wired money to the Philippines to provide her parents with a pittance they claimed was her salary; when she was tricked into agreeing to migrate to the United States; when the Parent Defendants procured a fraudulent visa for her in Manila; when the Parent Defendants trafficked her to the United States, robbing her of any opportunity to earn a reasonable salary in her home country; when Elnora opened a bank account for Ms. Martinez in the United States with no intention of depositing any of her paltry earnings. The Defendants' contention that Ms. Martinez has suffered a single "distinct injury" is simply in error.[10]

---

[9] While a single victim is sufficient in this Circuit to allege a pattern of racketeering activity, the Calimlim family's predicate acts and crimes harmed a large number of victims outside of the United States. As alleged in the Complaint, ¶¶ 28, 35(b) & (g), Ms. Martinez accepted the Calimlim's fraudulent job offer in order to remit money home to her parents and other family members. Like a corporate victim unable to pay commissions to employees due to defendants' fraud, Ms. Martinez was unable to satisfy promises that she had made to her family to provide material support from her wages. *Bankcard Am., Inc. v. Universal Bancard Sys.*, 904 F. Supp. 753, 760-61 (N.D. Ill. 1995) (treating case as multi-victim case where corporations could not pay employees as a result of the defendant's scheme).

[10] Defendants cite *RxUSA, Inc. v. Capital Returns Inc.*, No. 06-C-00790, 2007 WL 2712958, at * 8 (E.D. Wis. Sept. 14, 2007), for the proposition that "multiple acts of mail and wire fraud which create a single harm in a single

Even more compelling is the application of *H.J. Inc.*'s "temporal concept," which requires that a court consider the time span over which the predicate acts were committed. 492 U.S. at 241-42; *see also Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 473-74 (7th Cir. 2007) ("The duration of the alleged racketeering activity is perhaps the most important element of RICO continuity.") (quotation marks omitted). Ms. Martinez has alleged a "closed-ended" period of racketeering activity; with the raid on the Calimlim home and Ms. Martinez's rescue, the criminal conduct came to an abrupt and involuntary end. To satisfy the continuity element in a closed-ended case, a party "alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J., Inc.*, 492 U.S. at 242. By any measure, nineteen years is a "substantial" period of time.

In an effort to minimize the long duration of the racketeering activity, the Children Defendants misleadingly assert that "[p]laintiff's cover-up allegations do nothing to extend the duration of an underlying scheme or provide evidence of 'pattern' for RICO purposes." (Defs.' Mot. 10.) But Ms. Martinez does not allege a cover-up. Ms. Martinez alleges nineteen years of alien harboring and forced labor. As such, Ms. Martinez does not contest the well-established principle that a "conspiracy generally ends when the design to commit substantive misconduct ends" and that the length of conspiracy is not extended by co-conspirators' steps to avoid subsequent detection "after the central criminal purpose [of the conspiracy] has been accomplished." *See Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir.

---

transaction cannot constitute a pattern under RICO." That case is wholly inapposite. Under the mail and wire fraud statutes, each transmission is a separate offense. *See Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1989). As such, a single mass mailing may entail many, many counts of fraud. *RxUSA* stands for the simple proposition that one bulk mailing that causes an identical injury to its recipients is, standing alone, not enough to establish that defendants operated a criminal racketeering organization.

1991) (quoting *Grunewald v. United States*, 353 U.S. 391, 405 (1957)). The central criminal purpose of this conspiracy — the extraction of Ms. Martinez's forced labor — ended only when Ms. Martinez was freed by federal agents. Accordingly, the racketeering activities here extended over the full nineteen-year period of her captivity.[11]

### C. Ms. Martinez's Complaint Alleges Predicate Acts of Wire Fraud and Mail Fraud With Sufficient Particularity.

The Children Defendants argue that Ms. Martinez's RICO claims should be dismissed because she has failed to plead any allegations of mail and wire fraud with sufficient particularity. Their argument is without merit. There are three elements to establishing wire or mail fraud as a predicate act under RICO: "(1) a scheme to defraud; (2) an intent to defraud; and (3) the use of the mails or wires in furtherance of the scheme." *United States v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006). A scheme to defraud is "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises . . . . by trick, deceit, chicane or overreaching." *Carpenter v. United States* 484 U.S. 19, 27 (1987) (citations omitted). Intent to defraud requires a "wilful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another." *United States v. Britton*, 289 F.3d 976, 981 (7th Cir. 2002).

_____

[11] In a footnote, defendants suggest that Ms. Martinez's RICO claims *might* be time-barred because the statute of limitations "begins to run when the plaintiff discovers or should have discovered the injury, even if she has not yet discovered the pattern of racketeering." (Defs.' Mot. 16 n.9) Even assuming for the sake of argument that Ms. Martinez's RICO claims accrued while she was still imprisoned by the Calimlim family, the statute of limitations would clearly be tolled until Ms. Martinez was freed. Equitable tolling is available when a plaintiff, who has otherwise been diligent in the protection of her rights, is unable to timely file because of "extraordinary circumstances outside of [her] control and through no fault of [her] own[.]" *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). Following her release from captivity – which was surely an extraordinary circumstance – Ms. Martinez has participated in both criminal and civil proceedings against the Calimlim family. Defendants effectively concede that it is not clear from the face of the complaint whether or not the statute of limitations does ultimately bar Ms. Martinez's RICO claims. (Defs. Mot. 16 n.9.) This is no defect of Ms. Martinez's pleading. "Complaints need not anticipate or attempt to defuse potential defenses" such as the statute of limitations. *United States Gypsum Co. v. Indiana Gas Co*., 350 F.3d 623, 626 (7th Cir. 2003).

The communication at issue need not contain false or misleading information or to create pecuniary loss. *United States v. Brocksmith*, 991 F.2d 1363, 1367-68 (7th Cir. 1993). A plaintiff only needs to show that the use of the mails or wires was an essential element of the purported scheme. *United States v. Walters*, 997 F.2d 1219, 1222 (7th Cir. 1993) (citing *Pereira v. United States*, 347 U.S. 1, 8 (1954)); *see also Schmuck v. United States*, 489 U.S. 705, 710 (1989).

The Children Defendants' argument that Ms. Martinez has neglected to identify "the who, the what, when, were, and how" of the fraud (Defs.' Mot. 11-12) — fails. While the Children Defendants assert that Ms. Martinez has alleged fraud only generally, they ignore her allegations regarding the particular use of the mails and wires in furtherance of their grand scheme to deprive Ms. Martinez of rightfully earned wages — both in the United States and in the Philippines. Examples of predicate acts of mail and wire fraud, as alleged in the Complaint, include the following:

- ***Acts of Wire and Mail Fraud to Obtain Ms. Martinez's Forced Labor.*** Ms. Martinez alleges that in May and June of 1985, the Parent Defendants used international phone calls with Dr. Mendoza to make logistical arrangements for trafficking her into the United States, including obtaining a plane ticket and securing a visa (Compl. ¶ 111.e.) Ms. Martinez alleges that, as a result of those conversations, international transmissions were made between the U.S. Embassy in the Philippines and the U.S. State Department in Washington, D.C. The Parent Defendants "caused" these transmissions because they were a "reasonably foreseen" consequence of securing the visa. *Pereira v. United States*, 347 U.S. 1, 8-9 (1954); *United States v. Ratliff-White*, 493 F.3d 812, 818 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1070 (2008). Both sets of transmissions — those to orchestrate logistics and those to secure the visa — were done with the specific intent of tricking Ms. Martinez into migrating to the United States to perform

forced labor. (Compl. ¶ 114.e.)  The Parent Defendants' use of the wires to traffic Ms. Martinez into the United States on these arrangements was "surely instrumental to [the] scheme; indeed, it *was* the scheme." *Brocksmith*, 991 F.2d at 1367 (emphasis in original).

- **Acts of Wire Fraud to Conceal Ms. Martinez's *Forced Labor*.**  Ms. Martinez also alleges that, throughout her captivity from July 20, 1985 to September 2004, the defendants designed and used a telephone signaling system under which she was only able to answer the home phone after ten rings. (Compl. ¶ 73).  The wire fraud statue was violated each time a defendant or third-party phoned the Calimlims from out-of-state or from a cellular phone — signaling to Ms. Martinez whether she could pick up.  *See United States v. Mitra*, 405 F.3d 492, 496 (7th Cir. 2005) (recognizing that all cell-phones are a part of interstate commerce).[12]  This system was designed to keep Ms. Martinez concealed from outsiders but still available to provide both the Children and Parent Defendants with forced labor — even if they desired to dial-in service requests from afar.

- **Acts of Mail and Wire Fraud to Transfer Ms. Martinez's Purported Wages.** Ms. Martinez alleges that the Parent Defendants promised to deposit her salary into a bank account, which Elnora opened on June 22, 1987 and closed on August 22, 2005, and to transfer Ms. Martinez's wages to her parents in the Philippines. (Compl. ¶¶ 35.a., 114.e.)  At the criminal trial

---

[12]     Ms. Martinez need not identify specific instances of international or cellular phone calls, since the court may infer inter-state wire transmissions in this situation. *Cf. Olympic Fed. v. Remp,* No. 87C8705*, 1988 WL 64410, *6 (N.D. Ill. June 16, 1988) (inferring interstate telephone calls made in furtherance of a scheme to defraud where corporations were located in different states). Given the defendants' frequent communications with the Mendozas in the Philippines, (Comp. ¶ 112.b.), it is more than reasonable to infer that the Calimlims received at least one out-of-state call.  Further, because the signaling system was designed to permit the Parent and Children Defendants to dial-in labor requests and instructions to Ms. Martinez, there is every reason to believe that they did so by mobile phone. Without discovery, there is no way for Ms. Martinez to know whether defendants' service requests were made from cellular phones nor is there any way for her to know the origin of other calls, which, by virtue of the signaling system, she was not even permitted to answer. *See Emery v. Am. Gen. Fin, Inc..*, 134 F.3d 1321 (7th Cir. 1997) (recognizing that plaintiffs bringing mail and wire fraud claims should not be punished for her "inability to obtain essential information without pretrial discovery").

of Jefferson Jr. and the Parent Defendants, the evidence revealed that Ms. Martinez's parents had in fact received $18,000 during her nineteen-year captivity. (Compl. ¶ 35.a) Ms. Martinez alleges, on information and belief, that each payment was authorized by international communications between the Parent Defendants and the Mendozas, who ultimately delivered the payments. (Compl. ¶ 114.e.)  At a minimum, these communications included the letters defendants forced Ms. Martinez to pen, which Elnora collected and caused to be mailed to Ms. Martinez's parents and ultimately delivered to the Mendozas. (Compl. ¶¶ 65; 114.e.)  By using the mail to send Ms. Martinez's parents financial information in their daughter's own handwriting, the defendants were able to keep her parents at bay, concealing the Calimlim Family Enterprise's scheme to defraud Ms. Martinez and the entire Martinez family. *Cf. United States v. Turner*, No. 07-1062, 2008 WL 5396836, *10 (7th Cir. Dec. 30, 2008) (holding that use of the mails to lull victims into a false sense of security violates the mail fraud statute).

The Children Defendants also fail to acknowledge that "Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim."  *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).  A civil RICO plaintiff, like others, may allege circumstances surrounding mail or wire fraud "on information and belief" in situations where "facts [are] inaccessible to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992) (internal quotation marks omitted).  As Judge Posner has explained, even in RICO cases, the court must refrain from creating a "Catch-22 situation in which a Complaint is dismissed because of the plaintiffs' inability to obtain essential information without pretrial discovery." *Emery v. Am. Gen. Fin. Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).

Ms. Martinez cannot know some facts, such as information about when wire transmissions occurred between the U.S. Embassy and the Department of State, or between a

bank branch and the headquarters, or even between the Calimlims and the Mendozas. She was not a party to these communications. *See Corley*, 142 F.3d at 1050-51 (recognizing that plaintiff is most likely to lack information about fraudulent communications with third-parties); *Uni\*quality, Inc. v. Infotronix, Inc*., 974 F.2d 918 (7th Cir. 1992) (same). Likewise, Ms. Martinez cannot know or plead the dates that any letters were diverted from the U.S. postal service. *See, e.g., Hinsdale Women's Clinic, S.C.*, 690 F. Supp. at 660-61 (refusing to dismiss RICO claim that failed to allege dates of mailings where dates were presently unknown). Ms. Martinez, like other civil RICO plaintiffs, cannot be punished for failing to plead the dates or contents of each of defendants' acts of mail and wire fraud, because that information is peculiarly within the Parent and Children Defendants' control and inaccessible to her without discovery. *See Ash v. Wallenmeyer*, 879 F.2d 272 (7th Cir. 1989).

Ms. Martinez also cannot be expected to know which role each defendant played in a particular act of mail or wire fraud. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321 (7th Cir. 1994). Because Ms. Martinez "may not [be] privy to the particular individuals responsible for the letters, telephone calls" of defendants' fraudulent scheme, she must be excused from the requirement of identifying each individual's role with specificity. *Id.* at 1329 (citing *P & P Marketing, Inc. v. Ditton*, 746 F. Supp. 1354, 1362 (N.D. Ill. 1990)). Dismissing Ms. Martinez's Complaint for failure to identify the precise role of each "insider" in the defendants' criminal enterprise would defy controlling precedent.

### D. **Ms. Martinez Has Adequately Pled a Host of Additional Predicate Acts.**

In arguing that "plaintiff's allegations of predicate acts are deficient," (Defs.' Mot. 11), the Children Defendants focus only on the allegations of mail and wire fraud. But those are not the only predicate acts alleged in the Complaint. Indeed, the Complaint includes a plethora of acts constituting the pattern of racketeering activity. In addition to acts of mail and wire fraud,

Count I alleges trafficking, forced labor, and alien harboring. Moreover, Ms. Martinez need only plead these predicate acts in accordance with the general pleading standards established by Rule 8, not the heightened standard applicable to fraud under Rule 9(b).

The Children Defendants also ignore the multiple *convictions* for the predicate acts in this case — specifically the Parent Defendants' conviction for numerous forced labor offenses and both the Parent Defendants' and Jefferson, Jr.'s convictions for alien harboring. In light of these convictions, and the Complaint's detailed explanation of the underlying facts, there is no merit to the argument that the Complaint's allegations of predicate acts are deficient.

The Complaint also includes detailed allegations regarding each of the Children Defendants' commission of forced labor and alien harboring. For example, the Complaint alleges that each of the Children Defendants knowingly performed acts to conceal Martinez's presence, (Compl. ¶¶ 36, 46(b), 60-61, 79), forced her to work without compensation and against her will, (Compl. ¶¶ 54-57), ordered her to hide when riding in vehicles to church or stores, (Compl. ¶¶ 70-71), and required her to use a separate, elaborate phone system to communicate with them while still ensuring her concealment, (Compl. ¶¶ 73-74).[13] Ms. Martinez's Complaint clearly alleges predicate acts sufficient to support the existence of a RICO enterprise.

## III. MS. MARTINEZ HAS ALLEGED A COGNIZABLE RICO CONSPIRACY

The Children Defendants seek to dismiss Count II of the Complaint, which alleges their participation in RICO conspiracy under 18 U.S.C. § 1962(d). This provision makes it unlawful

---

[13] Neither Christina nor Jack need to have lived at home to commit the crime of alien harboring in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). The offense has four elements, "(1) the alien entered or remained in the United States in violation of the law, (2) the defendant concealed, harbored or sheltered the alien in the United States, (3) the defendant knew or recklessly disregarded that the alien entered or remained in the United States in violation of the law, and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States illegally." *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005). Christina and Jack satisfy all of these elements. In addition, the Children Defendants transported Ms. Martinez, a violation of 8 U.S.C. § 1324(a)(1(a)(ii).

"for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id.* To state a claim for RICO conspiracy, the plaintiff must prove that "the defendant was aware of the essential nature and scope of the enterprise and intended to participate in it." *United States v. Useni*, 516 F.3d 634, 646 (7th Cir. 2008). The complaint must allege facts supporting the existence of an agreement to "knowingly . . . perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000). Direct evidence of that agreement need not be alleged nor ultimately proven as "'an agreement can be inferred from the circumstances.'" *United States v. Stephens*, 46 F.3d 587, 592 (7th Cir. 1995) (quoting *United States v. Neapolitan*, 791 F.2d 489, 501 (7th Cir. 1986)). The pleading standards applicable to RICO conspiracy claims are not onerous. *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) ("[A]llegations of conspiracy are not measured under the . . . . [Fed. R. Civ. P.] 9(b) standard, which requires greater particularity of allegation of fraud, but are measured under the more liberal . . . [Fed. R. Civ. P. 8(a)] pleading standard.") (internal quotation marks omitted, alteration in original).

The Children Defendants seek to have the RICO conspiracy claim against them dismissed on three grounds: (1) that the Complaint does not sufficiently allege their agreement to join the human trafficking and forced labor conspiracy; (2) that they could not have joined the conspiracy given their youth at the time that the conspiracy commenced; and (3) that the Complaint does not provide enough factual detail regarding their participation in and support of the conspiracy. All three arguments fail.

In asserting that the Complaint does not adequately spell out their agreement to participate in the conspiracy, the Children Defendants ignore the fact that an agreement to

participate in a RICO conspiracy, as with any conspiracy, can be implied. *See Stephens*, 46 F.3d at 592.  Moreover, to state a claim for RICO conspiracy against the Children Defendants, the Complaint does not have to allege that they personally committed any predicate acts — "it is enough that one agree that someone commit the predicate acts." *Brouwer*, 199 F.3d at 964; *Neapolitan*, 791 F.2d at 498 (holding that RICO conspiracy liability is broad enough "to encompass those persons who, while intimately involved in the conspiracy, neither agreed to personally commit nor actually participated in the commission of the predicate" offenses).[14]

As the facts alleged in the Complaint make clear, the Children Defendants were aware of the general scope of the Calimlim Family Enterprise and intended to support and participate in it. Jefferson Jr., Jack, and Christina continued to force Martinez to work against her will for them when they returned home as adults. (Compl. ¶ 56.)  All three Children Defendants took affirmative and repeated steps to conceal Ms. Martinez's presence in their home — from never disclosing her existence to outsiders, to forcing her to duck out of sight when travelling by car, to using a ten-ring code before she could answer the main phone. (Compl. ¶¶ 60, 71 & 73); *see United States v. Townsend*, 924 F.2d 1385, 1395 n.5 (7th Cir. 1991) ("The use of a common code by all of the defendants may support an inference that they conspired together.").  Allegations further illustrating the Children Defendants' support of and participation in the trafficking and forced labor scheme include Christina's instructions to Martinez to hide when Christina brought her friends to the house and Jack's lies to Sherry Bantug in claiming Martinez as a relative. (Compl. ¶¶ 76, 78.)  The Complaint alleges Jack and Christina participated in Martinez's captivity by frequently telling her that she could not leave or return to the United States.

---

[14] Although the facts alleged in the Complaint clearly meet the *Brouwer* standard, the Complaint goes well beyond this standard in alleging — correctly and properly — that the Children Defendants actually committed acts of forced labor and alien harboring. (*See* Compl. ¶ 120.)

(Compl. ¶ 79.).  And, of course, Jefferson Jr.'s on-going participation in the conspiracy is even clearer as he was convicted of the predicate acts.  Without the Children Defendants' participation in and agreement to the conspiracy, it simply would not have been possible for Ms. Martinez to have been held in captivity for nineteen years.  Drawing all inferences in Ms. Martinez's favor, there can be no question that these allegations support the inference that the Children Defendants "knowingly agree[d] to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." *Brouwer*, 199 F.3d at 967.

The fact that the Children Defendants were young and not yet acting as members of the conspiracy when Ms. Martinez was first trafficked into their home does not bar their liability under section 1962(d).   The existence of a conspiracy is not disproved merely because its membership or the roles played by its participants change over time.  *United States v. Shorter,* 54 F.3d 1248, 1255 n.14 (7th Cir. 1995) ("As long as the conspiracy continues toward its goal to achieve a common objective, it remains a single conspiracy despite the fact that participants may change or perform different roles or functions at different times.") (quotation marks omitted); *United States v. Bello-Perez*, 977 F.2d 664, 668 (1st Cir. 1992) ("What was essential is that the criminal goal or overall plan have persisted without fundamental alteration, notwithstanding variations in personnel and their roles.").

Defendants would have this Court ignore that their participation in the conspiracy continued for *years* into their adulthood.  Ms. Martinez was held for six years past Christina's eighteenth birthday, ten years past Jack's and twelve years past Jefferson Jr.'s.  (Compl. n.1, ¶ 10.)  As adults, the Children Defendants continued to exploit Ms. Martinez's forced labor each time they returned home. (Compl. ¶¶ 54-56.)  And as adults, the defendants expressed their on-going support for the conspiracy by continuing to follow the family rule that Ms. Martinez's

existence was not to be discussed with anyone outside of their family. (Compl. ¶ 60.)
Accordingly, the Children Defendants are liable for conspiracy on three independent grounds:
*first*, because they were fully capable of knowing agreement to the conspiracy even as teenagers;
*second*, because they continued to manifest that agreement as adults; and *third*, because actions
that they took as adults in support of the conspiracy – from forcing Ms. Martinez to work against
her will to committing the crime of alien harboring – served to ratify all of their conspiratorial
conduct as minors. *See Wong*, 40 F.3d at 1368 (recognizing that "a defendant may ratify his pre-
eighteen [year-old] participation in a [RICO] conspiracy by continued participation after
attaining majority") (citing *United States v. Welch*, 15 F.3d 1202, 1211-12 (1st Cir. 1993);
*United States v. Maddox*, 944 F.2d 1223, 1233 (6th Cir. 1991)).[15] The Children Defendants'
former youth is no bar to their conspiracy liability.[16] *Id.* at 1366

Ms. Martinez is not required to allege the exact moment at which each defendant agreed
to join the conspiracy in order to properly plead a RICO conspiracy. *See United States v. Bin
Laden*, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) ("[T]he government is not required to prove . . .
exactly when or how a conspiracy was formed or when a particular defendant joined the scheme
. . . .") (internal quotation marks omitted), *aff'd sub nom. In re Terrorist Bombings of U.S.
Embassies in East Africa*, 549 F.3d 146 (2d Cir. 2008). Defendants cite no authority for their
claim that such precision is required. This Circuit's cases on pleading requirements for civil
conspiracy claims make clear that there is no such requirement. *See, e.g.*, *Ryan v. Mary*

---

[15] Ms. Martinez has amply alleged that the defendants took affirmative actions in support of the conspiracy after
attaining the age of majority. But because the defendants – including Jack and Christina – knew that Ms. Martinez
continued to be held in captivity, and did nothing to end that captivity, ratification also occurred through "intentional
inaction." *See Welch*, 15 F.3d at 1212.

[16] The cases that Defendants cite are not on point. *United States v. Jebara*, 313 F. Supp. 2d 912, 919 n.9 (E.D. Wis.
2004), deals with a sentencing enhancement of no relevance to this case. The footnote that Defendants cite from
*Tison v. Arizona*, 481 U.S. 137, 171 n.10 (1987), is not dispositive. The footnote recognizes that while youth is
relevant to culpability, it is not an outright bar to liability.

*Immaculate Queen Ctr.*, 188 F.3d 857, 869 (7th Cir. 1999); *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991). To require such detail would not only be contrary to the well-established principles of notice pleading, it would also be tantamount to requiring direct evidence of the agreement itself — again, something that has never been required. *See United States v. Koenig*, 856 F.2d 843, 854 (7th Cir. 1988) ("Because conspiracies are carried out in secret, direct proof of agreement is rare."); *United States v. Nesbitt*, 852 F.2d 1502, 1510 (7th Cir. 1988) ("Not only is the use of circumstantial evidence permissible, but circumstantial evidence may be the sole support for a [conspiracy] conviction.") (internal quotation marks omitted). The Children Defendants are incorrect in claiming that they have been denied fair notice of the basis for the racketeering conspiracy claim. In the criminal context, where the defendant has an even stronger interest in receiving all details underlying the charges brought against him, courts routinely deny defendants' pretrial requests that the prosecution disclose "when, where, how, and with whom each individual defendant joined an alleged conspiracy." *Bin Laden*, 92 F. Supp. 2d at 242; *see, e.g.*, *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006); *United States v. Balogun*, 971 F. Supp. 1215, 1229 (N.D. Ill. 1997).

Finally, not one of the of the Children Defendants *ever* withdrew from the conspiracy. *See United States v. Hargrove*, 508 F.3d 445, 449 (7th Cir. 2007) ("Inactivity alone does not constitute withdrawal; to withdraw from a conspiracy, the defendant must terminate completely his active involvement in the conspiracy, as well as take affirmative steps to defeat or disavow the conspiracy's purpose.") (internal quotation marks omitted). In sum, the Children Defendants have failed to assert any valid reason why the Count II of the Complaint for section 1962(d) RICO conspiracy ought to be dismissed against them.

## IV. MS. MARTINEZ HAS SATISFIED THE PLEADING REQUIREMENTS OF WOCCA.

Ms. Martinez has adequately pled a violation of the Wisconsin's Organized Crime Control Act (WOCCA) against the Children Defendants. *See* Wis. Stat. § 946.83(3). The statute provides that: "No person employed by or associated with any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity." Wis. Stat. § 946.82(3). The Children Defendant argue that Ms. Martinez has failed to properly allege that they "actually conducted or participated in the" in the enterprise. (Defs.' Mot. 13.) But the Children Defendants misunderstand what is required to "conduct" an enterprise under WOCCA and RICO. Cases construing the federal RICO statute, 18 U.S.C. § 1962, may be persuasive authority as to the interpretation of WOCCA, *State v. Judd*, 147 Wis. 2d 398, 401-02, 433 N.W.2d 260, 262 (Ct. App. 1988), and they are instructive here.

In *Reves v. Ernst & Young,* 507 U.S. 170 (1993), the Supreme Court made clear that in order to "to conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs," the defendant had only to play *"some* part in directing the enterprise's affairs." *Id.* at 179 (emphasis in original*).* Indeed, the Court explicitly recognized that an enterprise may be conducted "by lower-rung participants . . . who are under the direction of upper management." *Id.* at 183. The Seventh Circuit has held that such "lower-rung participants . . . may participate in the conduct of an enterprise 'by knowingly implementing decisions, as well as by making them.'" *MCM Partners v. Andrews-Bartlett & Assocs.*, 62 F.3d 967, 978 (7th Cir. 1995) (quoting *United States v. Oreto,* 37 F.3d 739, 750 (1st Cir. 1994)).

Under *Reves*, Ms. Martinez has clearly alleged that all three Children Defendants conducted and participated in the affairs of the enterprise through implementing the decisions made by "upper management" — namely, the Parent Defendants. For example, the Children

Defendants knowingly implemented their parents' decisions and directed the affairs of the enterprise each time that they used the ten-ring code in order to communicate with Ms. Martinez by phone, thus committing wire fraud. (Compl. at ¶ 73.) Each of the Children Defendants used this system at the direction of the Parent Defendants in order require Ms. Martinez to hide before they brought friends over to the house, and to dial-in additional chores. (Compl. at ¶ 74.) Moreover, the Children Defendants also conducted and participated in the affairs of the enterprise by making Ms. Martinez believe that escape was impossible, (Compl. ¶¶ 36, 46.b., 60-61, 79), forcing her to perform household labor, (Compl. ¶¶ 54-57.), and ordering her to conceal herself when riding in cars. (Compl. ¶¶ 70-71.) Both Jack and Jefferson made the decision to lie about Ms. Martinez to Sherry Bantug and to federal agents. (Compl. ¶¶ 76-77, 100.)[17]

Additionally, Ms. Martinez has clearly pled an "enterprise" under WOCCA. Enterprise is broadly defined under WOCCA as a "group of individuals associated in fact although not a legal entity," including both "illicit and licit enterprises." Wis. Stat. § 946.82(2).[18] In *State v. O'Connell*, 179 Wis. 2d 598, 610, 508 N.W. 2d 23, 28 (Ct. App. 1993), the Wisconsin Court of Appeals *rejected* an argument that a two-person association-in-fact which stole art from a

---

[17] Defendants make the half-hearted argument that Ms. Martinez has not sufficiently alleged "racketeering activity" as defined under Wis. Stat. § 946.82(4). WOCCA defines racketeering activity as either "activity specified in 18 U.S.C. § 1961(1) in effect as of April 27, 1982," or the "attempt, conspiracy to commit, or commission of any" state law felonies listed in section 946.82(4). In other words, federal offenses that were RICO predicates as of 1982 are defined as racketeering activity along with the attempt, conspiracy to commit, or actual commission of a long list of enumerated Wisconsin felonies. Mail fraud and wire fraud were included in and effective as predicate acts under section 1961(1) long before 1982. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 901(a), 84 Stat. 941 (1970). As such, Ms. Martinez's allegations regarding mail and wire fraud alone would be sufficient to show a pattern of racketeering activity under WOCCA. But Ms. Martinez has alleged much more than just these federal predicates — she has also alleged a host state law predicate acts that are sufficient to prove a pattern of racketeering activity under WOCCA, including Wis. Stat. § 940.302 (Human Trafficking), (Compl. ¶ 128.b.); Wis. Stat § 943.30 (Threats to Injure or Accuse of Crime), (Compl. ¶ 128.c.); Wis. Stat. § 940.31 (Kidnapping), (Compl. ¶ 128.d.); and Wis. Stat. § 940.30 (False Imprisonment), (Compl. ¶ 128.e.). Under WOCCA, defendants need not have personally committed these state law predicate acts in order for them to be defined as racketeering activity — it is enough that they conspired in their commission. *See* Wis. Stat. § 946.82(4). Defendants completely fail to address any of these additional predicate acts.

historical society over an eighteen-month period had no continuity, no framework or superstructure, and no distinguishing characteristics. *Id.* Rather, the court found the association within WOCCA's ambit because the defendants lived together, bought and sold antiques together, rented a storage shed to keep their antiques, dealt with antique dealers, received a check from the antique dealer and wrote checks to each other. *O'Connell*, 179 Wis. 2d at 605. The Defendants here similarly engaged in numerous licit activities as a family, (Compl. ¶¶ 10-13, 20, 52, 68), while also engaging in illicit activities — holding Ms. Martinez against her will, threatening her based on her immigration status, and extracting forced labor from her. (*E.g.*, Compl. ¶¶ 33, 35.f, 36.c, 40, 43, 46, 51-55, 68, 71-74, 78-79, 81). And, as already explained at length, the enterprise used both the wires and the mails to defraud Ms. Martinez and to keep her concealed. Thus, Martinez has adequately pled an association-in-fact enterprise under WOCCA.

## V. MS. MARTINEZ STATES A VIABLE CLAIM FOR RELIEF UNDER THE THIRTEENTH AMENDMENT AND UNDER 18 U.S.C. § 1584.

The Thirteenth Amendment provides, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. Although the Amendment grants Congress "power to enforce this article by appropriate legislation," U.S. Const. amend. XIII, § 2, claims for compulsory labor, peonage and involuntary servitude may arise directly from the Thirteenth Amendment itself because it is "undoubtedly self-executing without any ancillary legislation." *Civil Rights Cases,* 109 U.S. 3, 20 (1883); *accord United States v. Kozminski,* 487 U.S. 931, 942 (1988). In *Weidenfeller v. Kidulis*, 380 F. Supp. 445, 447 (E.D. Wis. 1974), this Court held that plaintiffs, residents of a state mental institution, had stated a claim directly under the Thirteenth Amendment for being forced to work without compensation. Defendants ignore this precedential authority.

Although there is a split among certain district courts, *Weidenfeller* is not alone in finding a private right of action directly under the Thirteenth Amendment. *See Terry Props., Inc. v. Standard Oil Co.*, 799 F.2d 1523, 1533-34 (11th Cir. 1986) ("corporate appellees, as private actors, may . . . . be liable directly under the Thirteenth Amendment as it absolutely prohibits the practice of slavery"); *Humphreys v. Nager*, 962 F. Supp. 347, 356 (E.D.N.Y. 1997) ("The Thirteenth Amendment is enforceable against private parties in the absence of state action."); *Dolla v. Unicast Co.*, 930 F. Supp. 202, 206 (E.D. Pa. 1996) (noting that direct Thirteenth Amendment claim may go forward if plaintiff alleges "that the defendant compelled him to work against his will"); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 410 (Ind. 1991) ("[S]uits attacking compulsory labor itself may rest on the [T]hirteenth [A]mendment.").

Moreover, this court may imply a civil cause of action under 18 U.S.C. § 1584, the Thirteenth Amendment's criminal enforcement statute. *See Manliguez v Joseph*, 226 F. Supp. 2d 377, 384 (E.D.N.Y. 2002). The *Manliguez* court reasoned that "recognizing a private civil cause of action for involuntary servitude would be consistent with the underlying legislative purpose of section 1584 because it would provide a victim with a direct and efficient means of protecting his or her rights and deter potential offenders from engaging in behavior that the statute was designed to prohibit." *Id.* That reasoning applies here with equal force.[19]

## VI.    EACH OF MS. MARTINEZ'S CLAIMS IS SPECIFIC AND EASILY PERMITS THE CHILDREN DEFENDANTS TO RESPOND.

Throughout their briefs, the Children Defendants assert that Ms. Martinez's claims lack sufficient definiteness or particularity. They make this argument in regard to both the RICO and

---

[19] The Children Defendants suggest that *Manliguez* is contrary to congressional intent, because it was decided prior to 18 U.S.C. § 1595's enumerated list of private rights of action. However, this argument fails under Congress's recent amendment section 1595 ***which includes a civil cause of action for 18 U.S.C. § 1584.*** There is no longer any doubt as to Congress's intent for there to be a civil cause of action under 18 U.S.C. 1584. *See William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008*, Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067 (2008).

WOCCA claims, (Defs.' Mot. 16), as well as to the non-racketeering causes of action stated in Counts IV, V, and VI. (Defs.' Mot. 19). The argument is baseless as to all of these claims.

It bears repeating that a complaint should only be dismissed when "the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc.*, 499 F.3d at 667. Under Rule 8(a)(2), the complaint must provide a "short and plain statement of the claim" and must contain a level of factual detail that "is indeed very minimal." *EEOC v. Concentra Health Servs., Inc*., 496 F.3d 773 (7th Cir. 2007); *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007) ("Any decision declaring this complaint is deficient because it does not allege X is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b).") (quotion marks omitted); *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (same).[20]

Again, there is nothing improper about the fact that Ms. Martinez's Complaint sometimes refers collectively to Christina, Jefferson Jr., and Jack Calimlim as the Children Defendants. When the complaint alleges that "Children Defendants" took particular actions, it is because, in fact, all three Children Defendants did so. The defendants' quibbling aside, the Complaint clearly advises them of the claims that are brought against them and the grounds on which those claims are based. This is all that Rule 8 requires. *See Concentra Health Servs.*, 496 F.3d at 779-81.

Second, Defendants' assertions that the Court should either dismiss Counts IV, V, and VI or require Ms. Martinez to file a more definite statement pursuant to Fed. R. Civ. P. 12(e) are utterly unavailing. "[T]he intent of the liberal notice pleading system is to ensure that claims are determined on their merits rather than through missteps in pleading." *Id.* at 779 (quotation marks

---

[20] Defendants also note that a RICO case statement was not filed along with the Complaint. Of course, there is no local rule requiring such a statement and, at any rate, all of the information that would typically be contained therein is already pled in Ms. Martinez's Complaint.

omitted).  At the pleading stage, Ms. Martinez is neither required to know nor allege every fact that will ultimately support her right to recover on the merits.  *Id.*  Moreover, this is simply not a case in which a relief under Rule 12(e) is warranted, as "Rule 12(e) motions are generally disfavored" and should only be granted "if the complaint is so unintelligible that the defendant cannot draft a responsive pleading."  *Moore v. Fidelity Fin. Servs., Inc.*, 869 F. Supp. 557, 559-60 (N.D. Ill.  1994); *see also Bukovcan v. Ruh*, No.  06-CV-0173, 2007 WL 26764, at *1 ) (E.D. Wis. Jan. 3, 2007) (Adelman, J.) ("Rule 12(e) strikes at the unintelligibility of a complaint.").

The Children Defendants' problem with the Complaint is not that it is unintelligible but only that it does not include so much detail as to allow them to assert merits-based defenses at the pleading stage.  But neither Rule 12(b)(6) nor Rule 12(e) function as defendants would prefer, upending principles of claim-pleading and instead requiring fact-pleading at defendants' self-serving request.  *See Vincent*, 485 F.3d at 923-24. ("Facts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.'").  If the Children Defendants have defenses that they wish to assert later  — including their age or the statute of limitations  — they remain free to do so.

## CONCLUSION

For the foregoing reasons, Ms. Martinez respectfully requests that this Court DENY the Children Defendants' Motions to Dismiss and Alternative Motions for a More Definite Statement.

Dated: January 19, 2009

     s/
     Robert Friebert
     Shannon A. Allen

S. Todd Farris
M. Andrew Skwierawski
FRIEBERT, FINERTY & ST. JOHN, S.C.
Two Plaza East - Suite 1250
330 East Kilbourn Avenue
Milwaukee, Wisconsin 53202
Telephone (414) 271-0130
Facsimile: (414) 272-8191

Jerold S. Solovy
Reena R. Bajowala
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, IL  60611-7603
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Martina E. Vandenberg
Sarah A. Maguire
Melissa A. Cox[*]
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, D.C.  20001-4412
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

---

[*] *Admission pending in the Eastern District of Wisconsin.*