# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**IRMA MARTINEZ**
                **Plaintiff,**

    v.                                                      **Case No. 08-CV-00810**

**JEFFERSON N. CALIMLIM,**
**ELNORA M. CALIMLIM,**
**JEFFERSON M. CALIMLIM,**
**CHRISTOPHER JACK CALIMLIM,**
**CHRISTINA CALIMLIM,**
                **Defendants.**

## DECISION AND ORDER

In May 2006, a federal jury convicted spouses, Drs. Jefferson N. and Elnora Calimlim (the "parent defendants"), of conspiring to obtain and obtaining forced labor and of conspiring to harbor and harboring an alien for private financial gain. The jury also convicted the parent defendants' son, Jefferson M. Calimlim ("Jefferson M."), of illegally harboring an alien. In the present civil action, the victim of the above-described offenses, plaintiff Irma Martinez, seeks damages from the parent defendants, Jefferson M. and other Calimlim children, Christopher ("Jack") Calimlim and Christina ("Tina") Calimlim (I will sometimes refer to the Calimlim children as the "children defendants").

Plaintiff alleges that the parent defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and that all defendants conspired to violate RICO; violated the Wisconsin Organized Crime Control Act ("WOCCA"); violated the Thirteenth Amendment and 18 U.S.C. § 1584, which criminalizes involuntary servitude; violated 18 U.S.C. §§ 1590 and 1595 by trafficking plaintiff and violated 18 U.S.C. § 1589 and 1595

by extracting forced labor from plaintiff. Before me now are the parent defendants' motions to dismiss counts one through four and stay counts five and six, and the children defendants' motions to dismiss counts two through six or alternatively for a more definite statement.

## I. SUMMARY OF ALLEGATIONS

Plaintiff alleges that the parent defendants, with the collusion of Elnora Calimlim's parents in the Philippines, unlawfully trafficked her from the Philippines into the United States. Plaintiff further alleges that after bringing her to the United States, the parent defendants essentially enslaved her, i.e., forced her to work for them for little or no pay, concealed her presence in their home and severely curtailed her access to the outside world. Plaintiff further alleges that the children defendants assisted their parents in conducting these unlawful activities and did so after they became adults. Plaintiff further alleges that she was unlawfully held in defendants' home for nineteen years and that her confinement ended only after the FBI raided the house and discovered her. I will discuss plaintiff's allegations in more detail in the course of this decision.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Where a defendant files a motion to dismiss after filing an answer, as at least one defendant has in the present case, I treat the motion as a request for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Such a request serves the same function as a Rule 12(b)(6) motion and is governed by the

same standard. See Republic Steel Corp. v. Pa. Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986).

To state a claim upon which relief can be granted, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me type accusation. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Determining whether a complaint states a plausible claim is context-specific. Iqbal, 129 S. Ct. at 1950. I assume the veracity of all well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows me to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 1949.

### III. DISCUSSION

**A.     Count I – RICO**

As stated, plaintiff alleges that the parent defendants violated RICO. Congress enacted RICO in an effort to combat organized long-term criminal activity. Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). Title 18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See United States v. Turkette, 452 U.S. 576,

3

580 (1981). Under 18 U.S.C. § 1964(c), a private individual may bring a civil action for a violation of § 1962(c). To prevail in a civil action alleging a violation of § 1962(c), a plaintiff must establish that the defendant participated in the conduct of an enterprise through a pattern of racketeering activity. Jennings v. Auto Meter Products, Inc., 495 F.3d 466, 472 (7th Cir. 2007). The parent defendants argue that plaintiff fails to allege the elements of a claim. For the reasons that follow, I disagree.

### 1. Participation in an Enterprise

An enterprise can be "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (2009). An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Turkette, 452 U.S. at 583. An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit such associates to pursue the enterprise's purpose. Boyle v. United States, 129 S. Ct. 2237, 2244 (2009).

An enterprise is not limited to groups whose crimes are sophisticated, diverse, complex, or unique. Id. at 2246. Nor is it limited to "business-like entities." Id. at 2243. It need not have a hierarchical structure or a "chain of command." Id. at 2245. Decisions may be made on an ad hoc basis and by any number of methods. Id. Furthermore, members of the group need not have fixed roles but may perform different roles at different times. Id. Nor must the group have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. Id. Although proof of a pattern of racketeering activity does not necessarily establish the existence of

an enterprise (and vice versa), the evidence used to prove the pattern of racketeering activity and that which establishes an enterprise "may in particular cases coalesce." Id.

An individual can participate in the conduct of an enterprise by directing it or by being a lower-rung participant under the direction of management. See Reves v. Ernst & Young, 507 U.S. 170, 178-79 (1983); MCM Partners, Inc. v. Andrews Bartlett & Assoc., Inc., 62 F.3d 967, 977-78 (7th Cir. 1995).

In the present case, plaintiff alleges that the Calimlim family constituted an association-in-fact enterprise and that the parent defendants participated in the conduct of this enterprise by directing its activities. I conclude that under Boyle, plaintiff alleges a RICO enterprise and participation in the enterprise by the parent defendants.[1] Plaintiff alleges the structural features necessary to the existence of an association-in-fact enterprise: purpose, relationships, and longevity. She alleges that the purpose of the alleged enterprise was to obtain, maintain and conceal plaintiff's involuntary labor. Plaintiff also alleges relationships: that the parent defendants cooperated with each other in conducting the enterprise and directed their children's enterprise-furthering activities. Plaintiff also alleges longevity, namely that the enterprise unlawfully held her captive and extracted her involuntary labor over a period of nineteen years. Thus, plaintiff alleges that the parent defendants participated in the affairs of an enterprise.

---

[1] Before Boyle, the Seventh Circuit limited enterprises to those bearing some "resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." Emery v. Am. Gen. Finance, Inc., 134 F.3d 1321, 1324 (7th Cir. 1998); accord Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 804-05 (7th Cir. 2008).

## 2. Racketeering Activity

In 18 U.S.C. § 1961(1), Congress identified a large number of criminal acts that can constitute racketeering activity. In the present case, plaintiff alleges that the parent defendants committed a number of such acts, including mail fraud, wire fraud, trafficking, harboring, and extracting forced labor

### a. Mail and Wire Fraud

To plead mail or wire fraud, plaintiff must allege that the parent defendants (1) devised a scheme to defraud, (2) intended to defraud, and (3) used the mails or interstate wires in furtherance of the fraudulent scheme. 18 U.S.C. §§ 1341, 1343 (2009); United States v. Leahy, 464 F.3d 773, 786 (7th Cir. 2006). In addition, plaintiff must allege with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Plaintiff's pleading satisfies these requirements. She alleges that the parent defendants devised a scheme intended to defraud her of her earnings and to prevent her from escaping. She further alleges that before bringing her to the United States, they promised to properly compensate her and to treat her well but that after she was here, they paid her $100 a month and confined her to their home, confiscating her passport and allowing her visa to lapse. She further alleges that they promised to send substantial sums to her parents in the Philippines but did not do so.

Plaintiff also alleges that the parent defendants used mail and wire communications on a number of occasions to further this scheme: in May and June 1985, they caused information to be transmitted from the United States to the Philippines to facilitate

trafficking plaintiff into the United States and tricking her into performing forced labor;[2] on August 22, 1985, defendant Elnora Calimlim used the wires to open a bank account for plaintiff, and on June 22, 1987, used the wires to close the account; and on a number of occasions, the parent defendants diverted plaintiff's letters from the United States mail, forced plaintiff to send financial information to her parents and used mail and wire communications with defendant Elnora Calimlim's parents to facilitate their unlawful exploitation of plaintiff.

### b. Trafficking, Harboring and Forced labor

To plead trafficking under § 1590, plaintiff must allege that the parent defendants (1) knowingly recruited, harbored, transported, provided or obtained a person for labor; or (2) obstructed enforcement of § 1590. To plead a violation of § 1589 prohibiting forced labor, plaintiff must allege that the parent defendants knowingly obtained the labor of another by means of force, serious harm, abuse of legal process, threats of such or by creating the belief that refusal to work will result in serious harm to them or another. To plead harboring under § 1324, plaintiff must allege that the parent defendants either (1) brought an alien into the United States; (2) transported an alien in furtherance of such illegal entrance; (3) concealed, housed, or shielded from detection an illegal alien in any place; (4) encouraged or induced an alien to enter the United States in violation of law; or (5) engaged in a conspiracy to commit any of the preceding acts, or aided or abetted the commission of any of the preceding acts.

---

[2] To violate §§ 1341 or 1343, a defendant need not mail or transfer anything himself. It is sufficient that he causes it to be done. Pereira v. United States, 347 U.S. 1, 8 (1954).

Plaintiff's pleading also satisfies these requirements. She alleges that the parent defendants unlawfully trafficked her into the United States and harbored her in their home to exploit her forced labor. In addition, a jury convicted defendants of both harboring and extracting forced labor from plaintiff.

### 3. Pattern

A defendant may engage in a pattern of racketeering activity by committing two predicate acts within a ten-year period. 18 U.S.C. § 1961(5) (2009); Sedima, S.P.R.L. v. Imrex, C.L., 473 U.S. 479, 496 n.14 (1985). This is the minimum number of acts necessary for a pattern to exist. H.J., Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 237 (1989). However, two predicate acts may well be insufficient to establish a pattern. Auto Meter Prods., 495 F.3d at 472. Rather, it is the relationship of the predicate acts to each other and the extent to which they indicate continuity that are critical to the formation of a pattern. H.J., Inc., 492 U.S. at 239. Under the "continuity plus relationship" test, a plaintiff can establish a pattern by showing that the predicate acts are related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong). Midwest Grinding, 976 F.2d at 1022.

Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature may be repeated in the future. H.J., Inc., 492 U.S. at 241. Determining whether a pattern of racketeering activity exists in any given situation is a fact-specific question, Jones v. Lampe, 845 F.2d 755, 757 (7th Cir.1988), which turns on such factors as (1) the number and variety of the predicate acts and the length of time over which the defendant or defendants committed them; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of

distinct injuries. Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1304 (7th Cir.1987). No one factor is necessarily determinative. Morgan v. Bank of Waukegan, 804 F.2d 970, 975-76 (7th Cir. 1986). The fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that they automatically fail to satisfy the pattern requirement. Id. Indeed, a party can demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. H.J., Inc., 492 U.S. at 241.

Plaintiff alleges a pattern of racketeering activity. As discussed, she alleges a number of related predicate acts and that the parent defendants committed them over a nineteen year period. She alleges a series of distinct injuries throughout her time with defendants. This is more than enough to satisfy the continuity requirement.

**B.     Count II – Conspiracy to Violate RICO**

Plaintiff also alleges that all defendants violated § 1962(d) by conspiring to violate RICO. In order to plead a conspiracy to violate RICO, a plaintiff must allege that a defendant agreed that he/she or another would participate in the conduct of an enterprise by engaging in a pattern of racketeering activity and further agreed to perform services which would facilitate the enterprise's unlawful conduct. Brouwer v. Raffensperger, Hughes & Co., 199 F.3d 961, 967 (7th Cir. 2000). Section 1962(d) targets persons who agree to violate RICO. To establish that defendants agreed to violate RICO, a plaintiff need not present direct evidence of an agreement. She need only point to evidence from which an agreement may be inferred. See United States v. Koenig, 856 F.2d 843, 854 (7th Cir. 1988); United States v. Nesbitt, 852 F.2d 1502, 1510 (7th Cir. 1988). A plaintiff also need not allege precisely when a defendant entered into the agreement.

I have already discussed why plaintiff's allegations against the parent defendants are sufficient to state a claim under RICO. For the reasons stated in that discussion, I may also easily infer an agreement by the parent defendants to violate RICO. As to the children defendants, plaintiff alleges that all three committed numerous acts as adults from which it can be inferred that they too agreed to violate RICO. Plaintiff alleges, for example, that as adults, the children assisted in harboring plaintiff in the Calimlim home, in concealing her presence there, in extracting forced labor from her, and in restricting her access to the outside world.

Thus, plaintiff alleges facts from which it may be reasonably concluded that all defendants agreed that the defendant parents would direct the conduct of an enterprise by committing a variety of acts of racketeering and that the children defendants would engage in various activities that facilitated the enterprise's unlawful conduct.

### C.    Count III – WOCCA

Plaintiff also alleges that all defendants violated WOCCA, Wis. Stat. § 946.80 et seq., the state law version of RICO. The Wisconsin legislature based WOCCA on RICO, and case law interpreting RICO is persuasive authority with respect to the interpretation of WOCCA. State v. Judd, 147 Wis. 2d 398, 401 (1988). WOCCA prohibits persons "employed by or associated with any enterprise" from conducting or participating "directly or indirectly, in the enterprise through a pattern of racketeering activity." Wis. Stat. § 946.82(3) (2009). To prevail in a civil action under WOCCA, a plaintiff must, therefore, establish that the defendant violated § 946.82(3). Thus, the analysis of whether plaintiff alleges a WOCCA claim is similar to that in which I addressed the adequacy of plaintiff's RICO claim.

However, WOCCA differs from RICO in small ways that are relevant to the present case. WOCCA does not include a civil cause of action for conspiracy. Also, some WOCCA definitions differ from those of RICO. Under WOCCA, a pattern of racketeering activity "means engaging in at least three incidents of racketeering activity. . . provided . . . that the last of the incidents occurred seven years after the first . . . ." § 946.82(3). Also, under WOCCA, racketeering activity includes "any activity specified in 18 U.S.C. § 1961(1) in effect as of April 27, 1982 . . ." plus a long list of state offenses. See Wis. Stat. § 946.82(4).

The parent defendants advance several arguments as to why plaintiff's WOCCA claim fails. First, they argue that plaintiff fails to allege a WOCCA enterprise. This argument fails for the reasons stated in the discussion of plaintiff's RICO claim. As discussed there, plaintiff alleges an association-in-fact enterprise, the Calimlim family. Second, the parent defendants argue that plaintiff fails to allege a pattern of racketeering activity. However, this argument fails because plaintiff alleges that the parent defendants committed numerous related predicate acts, including both federal and state offenses such as false imprisonment, battery, and fraud over a substantial period of time. Further, plaintiff alleges that many of the predicate acts occurred within seven years of each other. Thus, plaintiff alleges a WOCCA claim against the parent defendants.

As for plaintiff's WOCCA claims against the children defendants, lower-rung members of an association-in-fact enterprise who knowingly implement the decisions of management may be found to have participated in the enterprise. MCM Partners, Inc., 62 F.3d at 977-79. Plaintiff alleges that the children defendants were lower-rung participants of the enterprise who knowingly implemented their parents' decisions and that they did so

while they were adults. Plaintiff alleges that the children defendants committed a variety of predicate acts including, among others, assisting their parents in harboring plaintiff in the Calimlim home, in falsely imprisoning plaintiff, in concealing her presence from the world, forcing her to work without compensation and in threatening to accuse plaintiff of a crime. Although plaintiff's allegations regarding the children defendants' predicate acts are bare-bones, she alleges enough to indicate that she has a plausible WOCCA claim against them.

**D.    Count IV – Thirteenth Amendment, 18 U.S.C. § 1584**

Plaintiff also alleges that defendants violated her right not to be subjected to involuntary servitude as guaranteed by the Thirteenth Amendment.[3] She alleges that defendants subjected her to involuntary servitude by keeping her in their home, forcing her to perform uncompensated labor, concealing her presence from others, cutting off her access to the outside world, and threatening her in various ways in order to deter her from attempting to leave or report her condition to authorities. Defendants argue that federal courts may not provide relief to persons victimized by a violation of the Thirteenth Amendment because the power to vindicate the violation of a constitutional right is reserved exclusively to Congress. Neither the Supreme Court nor any court of appeals has addressed the issue.

---

[3]The Thirteenth Amendment States:
Section 1.    Neither slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
Section 2.    Congress shall have the power to enforce this article by appropriate legislation.

I disagree with the notion that federal courts may not provide a remedy to an individual whose constitutional rights have been violated in the absence of statutory authorization. Federal courts have long enforced constitutional provisions in situations where Congress has not created a statutory remedy. See Marsha S. Berzon, Securing Fragile Foundations: Affirmative Constitutional Adjudication in Federal Courts, 84 N.Y.U. L. Rev. 681 (2009). They have routinely recognized what we would call causes of action under various constitutional provisions. In many such cases, federal courts granted injunctive relief.[4] Their jurisdiction was based on the presence of a federal question, i.e., the alleged constitutional violation. See Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 69 (2001) (stating that a federal court's authority to recognize a constitutional tort not established by statute is grounded in its jurisdiction to decide cases arising under the Constitution, laws, or treaties of the United States); See also Bell v. Hood, 327 U.S. 678, 684 n.4 (1946) (stating that "it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the State to do") (footnote and citations omitted). And more recently, courts have permitted individuals to assert causes of action directly under the Constitution in

---

[4]See e.g. Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738 (suit in equity based on Article I and the Supremacy clause); Scott v. Donald, 165 U.S. 107, 108–09, 112 (1897) (Commerce Clause); Allen v. Balt. & Ohio R.R., 114 U.S. 311, 311–13 (1884) (Contracts Clause); Ex parte Young, 209 U.S. 123, 160-162 (1908) (Fourteenth Amendment and Commerce Clause); Brown v. Board of Edu., 347 U.S. 483 (1954) (Brown I); 349 U.S. 294 (1955) (Brown II) (grounding claim directly in the Fourteenth Amendment); Bolling v. Sharpe, 347 U.S. 497 (1954) (Fifth Amendment); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983) (Supremacy Clause); S. Cent. Timber Dev., Inc. v. Wunnicke, 467 U.S. 82-87 (1984) (Commerce clause).

Supremacy Clause preemption cases,[5] Dormant Commerce Clause cases,[6] and in suits against federal officers to enjoin enforcement of allegedly unconstitutional federal laws.[7] Berzon, supra, at 708-709.

Courts have also granted damages for constitutional violations without Congressional authorization. See White v. Greenhow, 114 U.S. 307, 308 (1885) (Contract Clause); Jacobs v. United States, 290 U.S. 13 (1933) ( Fifth Amendment); Nixon v. Herndon, 273 U.S. 536, 540 (1927) (Fourteenth Amendment); Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (Fourth Amendment). In so-called Bivens actions, individuals assert causes of action for money damages against federal officers for violations of the Due Process Clause of the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979); see also Carlson v. Green, 446 U.S. 14, 100 (1980) (damages available

---

[5] In Verizon Md., Inc. v. PSC, 535 U.S. 635, 642-643 (U.S. 2002), the Court stated:

We have no doubt that federal courts have jurisdiction under § 1331 to entertain such a suit. Verizon seeks relief from the Commission's order "on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail," and its claim "thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 (1983).

The Commission contends that since the Act does not create a private cause of action to challenge the Commission's order, there is no jurisdiction to entertain such a suit. We need express no opinion on the premise of this argument. "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89 (1998).

[6] See Wunnicke, 467 U.S. at 87.

[7] See Gonzales v. Carhart, 550 U.S. 124, 168 (2007).

for violations of Cruel and Unusual Punishments Clause of the Eighth Amendment). In these cases, courts based their decisions on the fact that there was no statutory prohibition against granting relief, no exclusive statutory alternative remedy and "no special factors counseling hesitation in the absence of affirmative action by Congress." Davis, 442 U.S. at 246-247; see also Carlson, 446 U.S. at 18-20.

The question then is whether a damages remedy is available directly under the Thirteenth Amendment.[8] As has been discussed, the fashioning of a remedy is a traditional judicial role. Bell, 327 U.S. at 684 (when a federally protected right has been invaded, "it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief") (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 162-63 (1803)). Furthermore, if "a general grant of jurisdiction to the federal courts by Congress is thought adequate to empower a federal court to grant equitable relief for all areas of subject-matter jurisdiction enumerated therein, [see 28 U. S. C. § 1331], then . . . the same statute is sufficient to empower a federal court to grant a traditional remedy

---

[8] A handful of district court cases have found that an individual cannot bring an action under the Thirteenth Amendment. In Turner v. Unification Church, 473 F. Supp. 367, 373-74 (D.R. I. 1978), the court concluded that because the plaintiff had other state and federal remedies, it need not authorize a cause of action under the Thirteenth Amendment. In Roe v. Bridgestone Corp.,492 F. Supp. 2d 988, 998 (S.D. Ind. 2007), the court found that the Thirteenth Amendment merely voided contracts involving slavery and made wrongs committed by slave owners against slaves actionable under conventional tort remedies.

I find these decisions unpersuasive. The Thirteenth Amendment was enacted in order to overcome state law. Its framers obviously did not intend to rely on state law and state courts to enforce it. Even one of the most conservative contemporary interpreters of the Thirteenth Amendment, Senator Edgar Cowan, believed that it created a direct cause of action. He argued that the core right that the Amendment established was "to give to the Negro the privilege of the habeas corpus; that is, if anybody persisted . . . in holding him as a slave, that he should have an appropriate remedy to be delivered." Cong. Globe, 39th Cong., First Sess. 499 (1866).

at law." Bivens, 403 U.S. at 402-03 (Harlan, J., concurring). A retrospective damages remedy is of particular importance in the context of the right to be free from involuntary servitude. Prospective relief will rarely be adequate given the unlikelihood of a victim's access to the courts.

Nevertheless, as discussed above and as Judge Berzon discusses in greater detail, although it is inconsistent with historical practice and it inverts our traditional understanding that equitable relief is only available when damages are inadequate, the Supreme Court has recently been disinclined to authorize a damages remedy in direct actions under the Constitution. See Malesko, 534 U.S. at 67-70. I also note that pursuant to its authority under section 2 of the Thirteenth Amendment, Congress has recently criminalized forced labor and also made it civilly actionable. See 18 U.S.C. § 1581, et seq. and 18 U.S.C. § 1595. Thus, plaintiff may already have a way of obtaining damages for her claim of involuntary servitude. This is uncertain, however, because the statutes pertaining to forced labor may not apply to the present case both because of retroactivity and statute of limitations problems. Thus, while I will recognize that plaintiff has a direct cause of action under the Thirteenth Amendment and accordingly deny defendants' motion to dismiss Count IV, I will reserve the question of whether plaintiff is entitled to damages.

### E. Count V – Trafficking

Section 1590 criminalizes trafficking with respect to peonage, slavery, involuntary servitude or forced labor, and § 1595 authorizes the victim of a trafficking offense to bring a civil action against the trafficker. In order to establish a trafficking claim, plaintiff must show that a defendant knowingly recruited, harbored or transported plaintiff for labor or services or obstructed or attempted to obstruct enforcement of the statute. The children

defendants argue that plaintiff fails to allege a violation of § 1590 as to them. However, plaintiff alleges that as adults, the children defendants assisted their parents in harboring plaintiff for the purpose of extracting forced labor from her. Further, Jefferson M. was convicted of harboring plaintiff and is also alleged to have lied to a federal agent in an attempt to obstruct his effort to find plaintiff. Thus, I conclude that plaintiff alleges a claim for trafficking against the children defendants.

Under § 1595(b)(1), a court may stay a civil action during the pendency of a criminal action arising out of the occurrence giving rise to the civil action. When plaintiff filed this action, the parent defendants asked me to exercise this authority because they faced re-sentencing in their criminal case. However, they have since been re-sentenced. I need not consider staying the present action.

**F.    Count VI**

Section 1589 criminalizes knowingly obtaining the labor or services of another by a number of means, and § 1595 authorizes the victim of such an offense to bring a civil action against the victimizer. Plaintiff alleges that defendants violated § 1589 by knowingly obtaining her labor by a variety of improper means and thus states a claim under § 1589.[9]

### IV. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that defendants' motions (Docket # 18, 47, 54, and 57) are **DENIED**.

---

[9]The parent defendants reiterate their request for a stay discussed in the previous section. I treat the request as I did there.

**IT IS FURTHER ORDERED** that defendant Jefferson M. Calimlim's motion is **DENIED**. (Docket # 28).

Dated at Milwaukee, Wisconsin this 26 day of August, 2009.

/s
LYNN ADELMAN
District Judge