UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**IRMA MARTINEZ**
   **Plaintiff,**

 v.               Case No. 08-CV-00810

**JEFFERSON N. CALIMLIM,**
**ELNORA M. CALIMLIM,**
**JEFFERSON M. CALIMLIM,**
**CHRISTOPHER JACK CALIMLIM,**
**CHRISTINA CALIMLIM,**
   **Defendants,**

**STATE FARM FIRE AND CASUALTY**
**COMPANY, CENTENNIAL INSURANCE**
**COMPANY, ATLANTIC MUTUAL INSURANCE**
**COMPANY, WEST BEND MUTUAL INSURANCE**
**COMPANY, ALLSTATE FLORIDIAN INSURANCE**
**COMPANY, ALLSTATE INSURANCE COMPANY, and**
**GENERAL CASUALTY COMPANY OF WISCONSIN,**
   **Intervenor Defendants,**

---

## DECISION AND ORDER

Plaintiff Irma Martinez brought this action claiming defendants, members of the Calimlim family, enslaved her for purposes of extracting forced labor in violation of the Racketeer Influenced & Corrupt Organizations Act ("RICO") and other laws. Various insurers moved to intervene, bifurcate and stay the litigation so that I could address the issue of insurance coverage before that of liability. I have supplemental jurisdiction over the insurers' claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as plaintiff's claims, and I granted the insurers' motions. The insurers

now move for summary judgment, arguing that they have no duty to defend defendants against plaintiff's claims.

## I. GOVERNING LEGAL PROVISIONS

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). I construe the evidence in the light most favorable to the non-movants and draw all reasonable inferences in their favor. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

### B. Applicable Law

The parties agree that Wisconsin law governs issues under the Atlantic insurance policies, the West Bend policies and the State Farm policies. Therefore, I will apply Wisconsin law to such issues. See Matter of Stoecker, 5 F.3d 1022, 1028 (7th Cir. 1993).

The parties disagree as to what law governs issues under the Allstate and Allstate Floridian policies. The insurers argue that Wisconsin law applies, and plaintiff and defendants argue that Florida law applies. To determine which state's law applies, I apply Wisconsin choice of law rules. Balt. Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 681 (7th Cir. 1986) (stating that federal courts should apply the forum state's choice of law rules to claims over which it has supplemental jurisdiction). Under Wisconsin choice of law rules, I apply Wisconsin law unless doing so would produce a different

outcome from that produced by non-forum law. Sharp v. Case Corp., 227 Wis. 2d 1, 11 (1999). In a case involving a contract, including a contract of insurance, if an outcome determinative conflict does exist, I apply Wisconsin law unless the non-forum state's contacts with the contract are clearly more significant than Wisconsin's. State Farm Mut. Auto Ins. Co. v. Gillette, 251 Wis. 2d 561, 577 (2002). In the present case, for reasons that I will subsequently discuss, I would reach the same conclusion whether I apply Wisconsin or Florida law. Therefore, I will apply Wisconsin law.

**C.    Wisconsin Law on Construction of Insurance Policies and Duty to Defend**

Under Wisconsin law, the interpretation of an insurance policy is governed by the same rules of construction that apply to other contracts. Sprangers v. Greatway Ins. Co., 182 Wis. 2d 521, 536 (1994). The goal is to determine and give effect to the intent of the parties. Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 268 Wis. 2d 16, 32 (2004). I interpret undefined words and phrases in an insurance policy as they would be understood by a reasonable insured, giving words and phrases their common and ordinary meaning. Zarder v. Humana Ins. Co., 324 Wis. 2d 325, 339 (2010). When the terms of the policy are clear and unambiguous, I may not rewrite them to bind an insurer to a risk it never contemplated and for which it did not receive premiums. Mullen v. Walczak, 262 Wis. 2d 708, 713 (2003). Ambiguous terms in the policy are construed in favor of the insured. Zarder, 324 Wis. 2d at 339. If words or phrases in a policy are susceptible to more than one reasonable construction, they are ambiguous. Id.

An insurer's duty to defend is broader than its duty to indemnify because the duty to defend is triggered by arguable rather than actual coverage. Newhouse v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 834-35 (1993). To determine whether an insurer has a duty

3

to defend, I compare the allegations within the four corners of the plaintiff's complaint to the terms of the applicable insurance policy. Id. at 835. If the complaint contains allegations that are partially within the scope of coverage, the insurer must defend the entire suit. See Curtis-Universal, Inc. v. Sheboygan E.M.S., Inc., 43 F.3d 1119, 1122 (7th Cir. 1994). The existence of the duty depends on the nature of the claim and has nothing to do with the claim's merits. Liebovich v. Minn. Ins. Co., 310 Wis. 2d 751, 766 (2008). Moreover, "[w]hat is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." Curtis-Universal, 43 F.3d at 1122. All doubt as to whether the complaint alleges covered conduct must be resolved in favor of the insured. Gen. Cas. Co. of Wis. v. Hills, 209 Wis. 2d 167, 176 (1997).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that she suffered numerous harms over the course of nineteen years as a result of the actions of the "parent defendants" Jefferson N. Calimlim ("Jefferson Sr.") and Elnora Calimlim ("Elnora"), and the "children defendants," Jefferson M. ("Jefferson Jr."), Christopher Jack ("Jack"), and Christina Calimlim ("Tina"). Plaintiff alleges that defendants trafficked her into the United States in 1985, and then isolated, concealed, enslaved and exploited her for the purpose of extracting her labor. Plaintiff alleges that defendants "forced her to clean Jefferson Sr.'s office and medical equipment at night several times a month," (Compl. ¶ 44), forced her to clean and repair investment property they owned in Wisconsin, including condominiums and apartments, (id. ¶ 42-43), and took her to Florida so she could provide labor there in defendant-owned properties. (id. ¶ 52).

4

I will refer to additional allegations in the course of the opinion.

## III. DISCUSSION

### A.  The Atlantic Policies

From 1997 to 2004, Atlantic Mutual Insurance Company and Centennial Insurance Company (collectively, the "Atlantic Companies") issued a homeowner's insurance policy on defendants' Wisconsin home, an umbrella policy providing for coverage above that provided by the homeowner's policy, and later a master's policy which combined the homeowner's and umbrella policies. The policies name all defendants as insureds. The homeowner's portion of the master policy is largely identical to the homeowners policy, and the umbrella portion of the master policy is identical to the 2000 and 2001 umbrella policies.

The homeowner's policy states that the insurer will cover "you and your family against financial loss if any of you accidentally hurts someone or damages their property." (Am. Compl., (Dkt. # 145), Ex. A at 23.) It states that "[t]his coverage applies to accidents. . . We'll pay money an *insured person* is legally obligated to pay as damages because of. . . bodily injury. . . nonbodily injury; or property damage." (Id.) Bodily injury means "physical harm, sickness, mental anguish or death, including any care required or services lost because of injury." (Id.) Nonbodily injury means "false arrest, invasion of privacy, wrongful eviction or entry, libel, slander or defamation of character." (Id.)

The 1998 and 1999 umbrella policies provide coverage for "damages because of personal injury or property damage resulting from occurrences during the policy period." (Id. Ex. F at 8.)  "'Occurrence' means an accident, including injurious exposure to

5

conditions, which results, during the policy period, in personal injury or property damage, neither expected nor intended from the standpoint of the insured." (Id. at 10.) The 2000 and 2001 umbrella policies provide coverage for "accidents covered by another liability policy, whether or not it's named on *your* Schedule of Underlying Insurance." (Id., Ex. H at 7.) The coverage applies to "**any kind** of accident, except under the circumstances described in the next section [Damages We Won't Pay]." (Id. at 8.)

Thus, the Atlantic policies provide liability coverage only for injuries caused by an accident.[1] Although not defined in the policies, the word "accident" has been construed by Wisconsin courts on numerous occasions. See Estate of Sustache v. Am. Family Mut. Ins. Co., 311 Wis. 2d 548, 565-570 (2008) (discussing recent cases). An accident is "an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; rather, it is the causal event that must be accidental for the event to be an accidental occurrence." Id. at 569-70 (quoting Stuart v. Weisflog's Showroom Gallery, Inc., 311 Wis. 2d 492, 515-516 (2008)).

The parties disagree as to whether an unexpected and unintended injury resulting from an intentional act may be considered accidental. See generally Lucterhand v. Granite Microsystems, Inc., 564 F.3d 809, 811 (7th Cir. 2009) (discussing recent cases). Regardless, the Atlantic policies do not provide coverage. First, the complaint alleges that

---

[1] Plaintiff and defendants argue that the Homeowner's policy, the 2000 and 2001 umbrella policies, and the master policy provide broader coverage, i.e., coverage for occurrences, which are defined in part as "incidents resulting in. . . loss." (Compl. (No. 145) Ex. A at 30; Ex. F at 11.) However, these policies clearly limit liability coverage to injuries caused by accidents. Coverage for losses resulting from incidents refers to coverage for property damage, a type of coverage not at issue in the present case.

defendants intended to cause the injuries that plaintiff suffered. For example, it alleges that defendants "knowingly transported [plaintiff]. . . intending that she be secretly confined or imprisoned, carried out of Wisconsin, and/or to be held in servitude against her will," (id. ¶ 129(c)), "knowingly and willfully held [plaintiff] in involuntary servitude in purposeful disregard of her rights," (id. ¶ 132), "knowingly and maliciously threatened to accuse Martinez of a crime or offense" and "intended these threats to extort or compel Martinez' labor and services," (id. ¶ 129(b)). It further alleges that defendants engaged in a pattern of racketeering activity and "had the same or similar intents, results, victim and method of commission when they committed each of these acts," (id. ¶126), and that their "actions were conceived of maliciously, in the spirit of mischief and with a criminal indifference to civil obligations." (Id.) In sum, plaintiff alleges that her injuries were the intended results of the "mental and physical coercion techniques to force her to work against her will." (Id. ¶ 132.)

Second, the conduct that plaintiff alleges was so substantially certain to result in harm or injury that intent to injure must be inferred as a matter of law. See A.O. Smith Corp. v. Allstate Ins. Cos., 222 Wis. 2d 475, 499 (Ct. App. 1998) (inferring intent to injure from alleged RICO conspiracy to commit fraud); K.A.G. v. Stanford, 148 Wis. 2d 158, 164 (Ct. App.1988) (inferring intent to injure from sexual molestation of a child); Raby v. Moe, 153 Wis. 2d 101, 110 (1990) (inferring intent to injure from armed robbery). Enslaving plaintiff for nineteen years, isolating her, mentally and physically abusing her, and denying her medical care was certain to cause plaintiff to suffer physical harm and mental anguish.

Plaintiff and defendants point to the presence of the word "neglect" in several of plaintiff's allegations, e.g., "[t]he Parent Defendants emotionally abused and neglected

7

Martinez," (Compl. ¶ 82,), and "at long last. . . [plaintiff] is free from Defendants'. . . threats, abuse, neglect, and physical control." (Id. ¶ 106.) They contend that I should treat the injuries plaintiff allegedly sustained as the result of neglect as being separate from those resulting from defendants' intentional acts and also as accidental. I disagree. That defendants neglected plaintiff in the course of enslaving and exploiting her cannot be reasonably regarded as transforming the harms she suffered into accidental injuries. No reasonable observer could find defendants' alleged neglect as separable from the rest of their conduct or its consequences as accidental. Plaintiff's complaint depicts an intentionally abusive living situation where plaintiff suffered harm because Jefferson Sr. yelled and threw things at her, (id. ¶ 85-87), Elnora demoralized and insulted her, (id. ¶ 89), all defendants isolated her, (id. ¶ 58-81), and refused to provide her with health care. (Id. ¶ 88-91.) The harms she suffered were not accidental. See Haessly v. Germantown Mut. Ins. Co., 213 Wis. 2d 108, 118 (Ct. App. 1997) (stating that a "reasonable person would not expect that his. . . policy would provide liability coverage for a failure to provide aid to someone whom he or she had previously rendered helpless through an intentional act"). Likewise, no reasonable person would believe that he could purchase "negligent enslavement" insurance coverage. Id. at 119; see also Jude v. City of Milwaukee, No. 06-C-1101, 2007 U.S. Dist. LEXIS 82809, at *14-18 (E.D. Wis. Oct. 26, 2007) (concluding that alleged failure to intervene and police cover up was not accidental).

Finally, the children defendants argue that as minors they could not have intended to harm plaintiff, and, alternatively, that they did not intend to harm plaintiff but to protect her from deportation. However, these arguments go to the merits of plaintiff's claims not to their nature. Plaintiff unambiguously and repeatedly alleges that all defendants,

8

including the children, committed intentional acts which were certain to harm plaintiff, e.g., that they "participated directly in her enslavement," (Compl. ¶ 36(b)), "committed affirmative acts . . . to make her believe that escape was impossible," (id.), "participated directly in the criminal conspiracy to traffic and harbor Plaintiff, in violation of . . . § 1962(d), (id. ¶ 4), "knew that Martinez was in the United States illegally and took affirmative steps to conceal her presence from the outside world." (Id. ¶ 57.) These allegations are inconsistent with the notion that the children harmed plaintiff accidentally.

**B.     West Bend Policies**

From 1985 to 2001, West Bend Mutual Insurance Company ("West Bend") issued business owner's policies to Jefferson Sr. on his medical office and some investment properties. The policies name Jefferson Sr. and Elnora as insureds, and provide that West Bend will "pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury**, **property damage** or **personal injury** caused by an **occurrence** to which this insurance applies." (Bajowala Decl.**,** Ex. B at 17.) An occurrence is "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured** and with respect to **personal injury**, the commission of an offense, or a series of similar or related offenses." (Id. at 31.) A personal injury is an "injury, other than 'bodily injury', arising out of. . . False arrest, detention or imprisonment. . . ." (Id.) [2]

---

[2]The relevant policy language changed beginning with the 1996 policy. The post-1996 policies provide that West Bend will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal

9

Because the West Bend policies provide liability coverage for bodily injury resulting from an occurrence, and define an occurrence as an accident, coverage for the alleged bodily injuries exists only if the injuries were caused by an accident. See, e.g., Everson v. Lorenz, 280 Wis. 2d 1, 11-12 (2005) (interpreting similar language). Thus, the West Bend policies provide no liability coverage because, as discussed, the complaint does not allege that plaintiff's bodily injuries resulted from an accident. The complaint does however allege that defendants falsely imprisoned plaintiff and forced her to clean insured premises. The harms resulting from these actions seem to be within the policies' definition of personal injury. However, the policies exclude coverage for personal injury "arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any **insured**." (Bajowala Decl. Ex. B at 20.) Plaintiff alleges that the personal injuries she sustained resulted from defendants' intentional violations of criminal statutes including Wis. Stat. §§ 940.30 (false imprisonment) and 940.31 (kidnapping), 18 U.S.C. §§ 1589 and 1594 (forced labor), and 8 U.S.C. § 1324(a) (harboring an alien). Thus, the injuries at issue appear to be within the penal exclusion.

---

injury' or 'advertising injury' to which this insurance applies." (Bajowala Decl., Ex. C at 15.) The post-1996 policies apply to bodily injury "caused by an 'occurrence' that takes place in the coverage territory; and. . . occurs during the policy period." (Id.) An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions. (Id. at 27.) The post-1996 policies also cover personal injury "caused by an offense arising out of your business. . .." (Id. at 15.) A personal injury is an "injury, other than 'bodily injury', arising out of. . . False arrest, detention or imprisonment. . . ." (Id. at 27.) The policies exclude coverage for personal injury "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." (Id. at 21.) Because these changes do not affect my analysis, I will analyze coverage using the language from the pre-1996 policies.

Plaintiff argues to the contrary, contending that the exclusion is ambiguous and should be construed in favor of coverage. She contends that the phrase "willful violation of a penal statute" requires specific intent to violate a penal statute. However, even if this is so, the complaint alleges such intent. (See Compl. ¶¶ 114, 117, 120, 129, 132) (alleging that Jefferson Sr. and Elnora willfully violated penal statutes), & ¶ 2 (alleging that such conduct resulted in criminal convictions).

**C.   State Farm Policies**

State Farm Fire and Casualty Company ("State Farm") issued two condominium policies to Jefferson Jr., two apartment policies to Jefferson Sr., and three renter's policies to Tina. The parties agree that Jefferson Jr.'s and one of Tina's policies do not provide coverage but disagree about the others. The children defendants also argue that State Farm is barred from contesting coverage because the lawyer who prepared its motion to intervene was employed by the law firm that Allstate engaged to represent Tina on a reservation of rights basis. However, the children defendants do not meaningfully develop this argument and therefore waive it. See Cent. States, SE & SW Areas Pension Fund v. Midwest Motor Express, 181 F.3d 799, 808 (7th Cir. 1999) (stating that "[a]rguments not developed in any meaningful way are waived"); see also Robyns v. Reliance Standard Life Ins. Co., 130 F.3d 1231, 1237 (7th Cir. 1997) (stating that a party opposing summary judgment must inform the district judge of the reasons, legal or factual, why summary judgment should not be entered).

Jefferson Sr.'s apartment policies do not provide coverage. They provide business liability coverage, applicable to "bodily injury. . . caused by an occurrence. . ." and to "personal injury caused by an occurrence. . ." (Woehl Aff. Ex. C2 at 4; Ex. D1 at 26.) An

11

occurrence is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury" or "the commission of an offense, or series of similar or related offenses, which results in personal injury." (Id. Ex. C2 at 16; Ex. D2 at 13.) The policies do not provide coverage because the complaint does not allege that plaintiff's bodily injuries resulted from an accident and because the policies contain a penal exclusion,[3] which precludes coverage for personal injuries. In addition, the policies do not name the children defendants as insureds.

Nor do Tina's renter's policies provide coverage. Her California apartment policy became applicable in January 2006, long after plaintiff alleges that she escaped defendants' control. Thus, no occurrence took place during the policy period. Tina's policy on a Pennsylvania apartment took effect on August 27, 2004, about one month before plaintiff was freed. It provides liability coverage for "damages because of **bodily injury**. . . to which this coverage applies, caused by an occurrence . . . ." (Woehl Aff. Ex. E. at 17.) An occurrence is "an accident, including exposure to conditions, which results in. . . **bodily injury**. . . during the policy period." (Id. at 7.) The policy does not provide coverage because plaintiff does not allege an accident.

## D.  Allstate and Allstate Floridian Policies

Allstate Insurance Company ("Allstate") issued a condominium owner's policy to Jefferson Sr. applicable to a Florida condominium from July 22, 1982 to July 22, 1997. Allstate Floridian Insurance Company ("Allstate Floridian") issued a policy to Jefferson Sr.

---

[3]The penal exclusion precludes coverage for personal injuries "arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." (Id. Ex. C2 at 8; Ex. D2 at 5.)

for the same property, applicable from July 22, 1997 to July 5, 2001. The policies named all defendants as insureds. Coverage under the policies extended to any other premises used as a residence, including defendants' Wisconsin home.

The policies covered injuries resulting from an accident.[4] As I have discussed, Wisconsin law does not provide coverage because plaintiff does not allege an accident. However, plaintiff and defendants argue that Florida law defines "accident" more broadly and would provide coverage. See State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998). I disagree that Florida law would provide coverage. Under Florida law, plaintiff's injuries did not result from an accident unless defendants did not "intend[] to inflict any harm on [her]." Hartford Fire Ins. Co. v. Spreen, 343 So. 2d 649, 651-52 (Fla. 3d DCA 1977); see also Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467, 472-473 (Fla. 1993). As I have discussed, no reasonable person could read plaintiff's allegations and conclude that defendants did not intend to harm her. Enslaving and exploiting plaintiff were certain to cause her harm. See CTC Dev. Corp., 720 So. 2d at 1076 (intent to harm will be inferred as a matter of law where the insured's actions are so inherently dangerous or harmful that injury is sure to follow); see also Landis v. Allstate

---

[4] The 1984-1990 Allstate policies provide family liability coverage for "all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage." (Sisson Aff., Ex. A at 44.) The 1990-1997 policy states that "**Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an accident and covered by this part of the policy." (Id. at 76.) The Allstate Floridian policy provides family liability protection coverage for "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy." (Id., Ex. B at 25.) An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in **bodily injury** or **property damage**." (Id. at 8, 54.)

Ins. Co., 546 So. 2d 1051, 1053 (Fla. 1989) ("some form of harm inheres in and inevitably flows from the proscribed behavior").

## IV.  CONCLUSION

For the reasons stated, none of the insurers have a duty to defend or indemnify defendants.  Therefore,

**IT IS ORDERED** that the intervening defendants' motions for summary judgment (Docket numbers 181, 185, 186, and 192) are **GRANTED**.

Dated at Milwaukee, Wisconsin this 13 day of September, 2010.

/s_____
LYNN ADELMAN
District Judge